**In the Matter of the GREATER ATLANTA APARTMENT HUNTER'S GUIDE, INC., d/b/a Guide Publications, Ltd., Debtor.**

**Bankruptcy No. 83–04528A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 28, 1984.

James C. Bussart, Fraser & Bussart, Atlanta, Ga., for debtor.

John C. Pennington, Atlanta, Ga., for movant.

OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

Debtor-corporation, The Greater Atlanta Apartment Hunter's Guide, Inc. ("Greater

Atlanta"), which had been placed in receivership by Fulton Superior Court on February 1, 1983, filed a voluntary Chapter 7 petition on October 7, 1983. The Board of Directors of Greater Atlanta had passed a corporate resolution on September 30, 1983, authorizing the bankruptcy filing. Marvin Nodvin ("Nodvin") a 50 percent shareholder, who originally had filed to place the corporation in receivership objected to the corporation's bankruptcy filing. On November 10, 1983, Nodvin filed the motion presently under consideration to dismiss the corporation's Chapter 7 petition. Nodvin bases his motion for dismissal on the following grounds: (1) as the corporation was in receivership, it could not file a voluntary bankruptcy petition; and, (2) the Board of Directors could not pass a legitimate corporate resolution as the Board was invalidly constituted. Because the court finds that there is no law which would prevent the corporation from filing a voluntary Chapter 7 petition while under a state court appointed receivership and because this court finds that under the Georgia Business Corporation Code the Board was validly constituted, the court denies Nodvin's motion to dismiss the Chapter 7 petition.

### FINDINGS OF FACT

1. Sometime in November of 1981, attorney Marvin Nodvin ("Nodvin") and Edna Rasmussin ("Rasmussin") agreed to form a corporation to be known as the Greater Atlanta Apartment Hunter's Guide, Inc. ("Greater Atlanta");

2. Rasmussin and Nodvin were each 50 percent stockholders of the corporation;

3. Rasmussin was president of the corporation;

4. Nodvin was vice-president and secretary of the corporation;

5. Rasmussin and Nodvin constituted the entire Board of Directors;

6. The corporation commenced operation in March, 1982;

7. Although evidence revealed that outside counsel had drafted the Articles of Incorporation and the bylaws, the current location of the Articles of Incorporation and bylaws are in dispute, and neither have been introduced into evidence before this court;

8. Sometime in January of 1983, Nodvin alleged that assets of the corporation had been misappropriated;

9. Nodvin discussed the disappearance of the assets with Rasmussin and for several days thereafter Rasmussin could not be located and contacted;

10. On about January 17, 1983, Nodvin submitted his resignation as an officer and director of Greater Atlanta;

11. Nodvin attempted to call a stockholders meeting of the corporation for January 19, 1983;

12. Although Nodvin, Rasmussin, and Rasmussin's attorney met on January 19, 1983, no shareholder business was transacted at the meeting;

13. On about January 31, 1983, Rasmussin, the sole remaining Director of the corporation, appointed Kathleen Siriani ("Siriani") as a Director to fill the vacancy created by Nodvin's resignation;

14. At the same time Siriani was appointed secretary and treasurer of Greater Atlanta;

15. On about February 1, 1983, Nodvin applied to Fulton County Superior Court for the appointment of a receiver for Greater Atlanta;

16. On February 1, 1983, the Fulton County Superior Court Judge appointed a receiver for the corporation although the written order was not signed until February 4, 1983;

17. On about September 30, 1983, the Board of Directors composed of Rasmussin and Siriani met and unanimously approved a resolution authorizing Greater Atlanta to file a voluntary Chapter 7 petition;

18. On October 7, 1983, the debtor's voluntary Chapter 7 petition was filed;

19. No annual shareholders' meeting has been held since the debtor's incorporation;

20. On November 10, 1983, Nodvin filed his motion to dismiss debtor's Chapter 7 petition;

21. A hearing on January 30 and 31, 1984, was held and post-hearing briefs were submitted.

## DISCUSSION

### A

Nodvin, a 50 percent shareholder in Greater Atlanta, has requested that this court dismiss the voluntary Chapter 7 petition filed by the corporation. Nodvin has argued that because the corporation was under a state court receivership the Board of Directors would have been without authority to file a Chapter 7 petition. Although this argument was urged at the January 30, 1984 hearing by Nodvin's counsel, it was not included in the brief filed with the court February 21, 1984. Nevertheless, the court addresses the argument briefly.

█ No statutory law or decisional law supporting Nodvin's position was cited at the January 30, 1984 hearing. Nor has the court found any. Perhaps this is because such argument runs so patently counter to the statutory right of a debtor to the privileges of the national uniform statute on bankruptcies and the inherent prohibition against any bar by other authority to the exercise of that right. This court holds that a state court receivership cannot operate to deny a corporate debtor access to this nation's federal Bankruptcy Courts. See discussion in *Jordan v. Independent Energy Corporation*, 446 F.Supp. 516, 525–30 (D.C.N.D.Tex.1978) ("Congress has enacted a uniform federal bankruptcy poli-

cy and has granted the Bankruptcy Courts power to fairly adjudicate and administrate disputes between debtors and creditors .... an order restricting access to the Bankruptcy Court, other than as specifically provided by Congress in the Bankruptcy Act, would not be in the public interest."); *United States v. Royal Business Funds Corporation*, 29 B.R. 777, 779 (D.C.S.D.N.Y.1983), *aff'd*, 724 F.2d 12 (CA2, 1983) ("The court [*Jordan v. Independent Energy Corporation* court] made it clear that those cases holding that the dependency of a *state* receivership cannot bar the filing of a federal bankruptcy petition rest upon the grant of exclusive bankruptcy jurisdiction to the federal courts and constitutional principles of supremacy ....").

### B

Nodvin's second argument is more complicated. The allegation is that because of a failure to hold a shareholders' meeting and elect a new Board of Directors the Board of Directors acting on September 30, 1983 was not a validly constituted Board and could not authorize a valid resolution. The governing law in this matter is the Georgia Business Corporation Code. Analysis of the interrelationship between several sections within this Code demonstrates that Nodvin's contention does not properly apply the Georgia Business Corporation Code.

The starting point for analysis begins with whether the January 31, 1983 appointment of Siriani to the Board of Directors was a valid act. Pursuant to OCGA §§ 14–2–141(a) and 14–2–144(1), this court concludes that the appointment by Rasmussin, the sole remaining Director, was a lawful act.[1]

---

**1.** OCGA § 14–2–141 Same [Directors]—Number; terms; selection

(a) The number of directors of a corporation shall not be less than three, except that if all the shares of a corporation are owned beneficially and of record by less than three shareholders, the number of directors may be less than three *but not less than the number or shareholders* .... (Emphasis supplied.)

OCGA § 14–2–144 Same [Directors]—Vacancies
Unless the Articles of Incorporation or bylaws otherwise provide:

(1) Except as provided in paragraphs (2) and (3) of this Code section, any vacancy occurring in the Board of Directors may be filled by the affirmative vote of a majority of the remaining Directors, though less than a quorum of the Board of Directors, *or by the sole remaining Director*, as the case may be, or, if the vacancy is not so filled or if no Director remains, by the shareholders.... (Emphasis supplied.)

■ The second point to observe is that Siriani was appointed to fill the vacancy left by Nodvin's resignation. Her appointment, then, was only for Nodvin's unexpired term as a Director. Under Georgia law, a Board of Directors is to be elected at its annual shareholders' meeting. OCGA § 14–2–112. Without the introduction of Greater Atlanta's bylaws as evidence of a contrary date, this court must look to OCGA § 14–2–112(b) to determine what date the shareholders meeting should have occurred. The Code section provides that "the annual meeting shall be held on the second Tuesday of the fourth month following the end of the fiscal year of the corporation ...". § 14–2–112(b). The end of Greater Atlanta's first fiscal year was February 28, 1983. Following § 14–2–112(b) the annual shareholders meeting should have occurred the second Tuesday of June, 1983. No shareholders meeting was held at that time. Nor was a shareholders' meeting held earlier although the court notes that Nodvin made an attempt to call a shareholders meeting on January 19, 1983, two days after his resignation as an officer and member of the Board of Directors.

■ Having been unsuccessful at calling a shareholders' meeting, Nodvin's next act was to file in Fulton County Superior Court for the appointment of a receiver over Greater Atlanta. This request was granted from the bench on February 1, 1983. In its Findings of Fact, the Superior Court noted among other things that Siriani had been appointed as an interim Director to fill the vacancy left by Nodvin's resignation. The Order entered by the Superior Court included a prohibition against any interference with the proper operation of the debtor-corporation and the appointment of a receiver who was to take charge and manage the business and assets of the corporation. The receiver was requested to make a preliminary report to the Superior Court in 10 days. Neither that interim report nor any other evidence as to what occurred under the receivership for the next eight months, before the corporation's filing of

the voluntary Chapter 7 petition, has been submitted.

There is no clearly prescribed course of conduct for parties in the predicament which Greater Atlanta, Rasmussin, Nodvin, Siriani, and the receiver found themselves in after February 1, 1983. Greater Atlanta was not free to engage in business as usual because it was under a state court receivership. There appears to have been a shared belief, given voice at the January 30, 1984 hearing by Nodvin, that a shareholders' meeting would be valueless and unnecessary: "We had been enjoined from proceeding to do anything by the court. There was no reason to have a shareholders meeting .... The court enjoined us from proceeding in the conduct of the business. There was nothing to have a shareholders meeting about ..." (p. 27). Certainly, no shareholders' meeting was held after the receiver had been appointed.

Yet, the Georgia Business Corporation Code does not expressly state or imply that in the circumstances which developed after February 1983 the individuals who were members of the Board of Directors automatically lost their directorship. In fact, reading §§ 14–2–141(d), 14–2–112(b), and 14–2–285 together suggests that the Board as constituted on February 1, 1983, was viable when it authorized the filing of Greater Atlanta's Chapter 7 petition.

Section 14–2–141(d) provides:

At the first annual meeting of shareholders and at each annual meeting thereafter, the shareholders shall elect directors to hold office until the next succeeding annual meeting ... The Articles of Incorporation may provide for the election of one or more directors by the holders of the shares of any class or series. Each director shall hold office for the term for which he is elected and until his successor shall have been elected and qualified or until his earlier resignation, removal from office or death.

Under this statute, then, a director holds office for the term for which he is elected and until his successor shall have been elected and qualified. According to the

statute that term should be no longer than a year. Under the instant circumstances, there was, in fact, no shareholder election and consequently no elected and qualified successors either for Rasmussin's or Siriani's directorship.

If Rasmussin and Siriani had somehow ceased to be Greater Atlanta directors due to the failure to hold a shareholders' election, the corporation would have been entirely without corporate directors. The Georgia Code does not contemplate a corporation under this set of circumstances. Rather than accept a directorless entity Georgia law provides alternatives to prevent the elimination of corporate directors before new ones have been elected and qualified. Thus, a shareholder unhappy with corporate directors has the opportunity to try to institute changes. He may choose to follow the procedure set forth in § 14–2–112(b):

> If the corporation shall fail or refuse to hold the annual meeting on (1) the date provided therefor pursuant to the bylaws, or (2) in the absence of such designation, the date provided in this Code section and shall thereafter also fail or refuse to hold the annual meeting within 60 days after being requested by any shareholder to do so, the Superior Court of the county where the registered office of the corporation is located may, after notice to the corporation, order a substitute annual meeting to be held upon the application of such shareholder. The Superior Court may issue such orders as may be appropriate, including, without limitation, orders designating the time and place of such meeting, the record date for determination of shareholders entitled to vote, and the form of notice of such meeting.

Nodvin failed to pursue this legal avenue for remedying the failure to elect a new Board of Directors at a shareholders' meeting. Nor does the general belief that a shareholders' meeting was unnecessary after February 1, 1983 excuse his inaction. Nodvin knew after February 1, 1983 how the Board of Directors was constituted and that the Board did not represent his shareholder interest. He had a period of eight months to challenge the composition of the Board of Directors. Under the legal procedures set forth in § 14–2–112(b) he could have required the election of a new Board. Having failed to follow the remedy provided by the State legislature, this court does not favor Nodvin's attempt to undermine the corporate decision to file a Chapter 7 petition when such filing does not violate the law.

The language of § 14–2–112(b) gives additional support to the decision to deny Nodvin's motion: "failure to hold the annual meeting shall not work a forfeiture or give cause for dissolution of the corporation, except as provided in Code § 14–2–285 in case of deadlock among directors or shareholders, nor shall such failure affect otherwise valid corporate acts." If Nodvin had wanted to nullify the express terms of § 14–2–112(b) which otherwise appears to validate the corporate resolution of September 30, 1983, Nodvin could have tried to invoke § 14–2–285 [2] in Superior Court. Ac-

---

**2.** Georgia Business Corporation Code § 14–2–285. Liquidation of corporate assets and affairs—Jurisdiction of superior courts; venue; parties.

(a) The superior courts shall have full power to liquidate the assets and business of a corporation:

(1) In an action by a shareholder when it is established:

(A) That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, that irreparable injury to the corporation is being suffered or is threatened by reason thereof, and that is impracticable for the court to appoint a provisional director as provided in Code Section 14–2–142 or to continue one in office;

(B) That the acts of the directors or those in control of the corporation are illegal or fraudulent;

(C) That the shareholders are deadlocked in voting power and have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors; or

(D) That the corporate assets are being misapplied or wasted;

cording to the record before this court, the Superior Court based no part of its written Order of February 4, 1983 on this statutory section.

Certainly, the allegations Nodvin made at the time he requested the appointment of a state court receiver would have been governed by § 14–2–285(a)(1). Such allegations as Nodvin made, however, must be "established" before the superior court has the "power to liquidate the assets and business of a corporation." No evidence has been introduced before this court to suggest that Nodvin's allegations regarding the illegal or fraudulent acts or the misapplication or waste of corporate assets were ever so "established." OCGA § 14–2–285(a)(1)(B) and (D).

Additionally, subsections (a)(1)(A) and (a)(1)(C) are especially important in view of the specific circumstances. Either no effort was made to convince the superior court that the shareholder deadlock was threatening irreparable injury to the corporation and the appointment of a provisional director was impracticable or the effort failed to convince the superior court judge. Under either premise, Nodvin did not successfully invoke § 14–2–285(a)(1)(A). Section 14–2–285(a)(1)(C) provides another clear indication that the state lawmaking authority envisioned circumstances in which directors whose terms should have expired might still function as the corporation's directors. On this point, the legislature made a policy decision to limit the length of time such circumstances would be tolerated. If the duration "includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors" the superior court has the authority to liquidate the assets and business of a corporation. In the instant circumstances, Nodvin could not meet the test under § 14–2–285(a)(1)(C) because two consecutive annual meeting dates had not passed at the time the incumbent Board of Di-

. . . .

rectors authorized Greater Atlanta's bankruptcy filing.

For the reasons set forth above, this court finds that the resolution passed by the Board of Directors of Greater Atlanta authorizing the corporation to file a voluntary Chapter 7 petition to have been a lawful act by a lawfully constituted board. Movant's motion to dismiss the corporation's Chapter 7 case is denied.