In re TROY DAVIS HOMES, INC., Debtor.

TROY DAVIS HOMES, INC., Plaintiff–Appellant,

v.

AMERICAN CONTINENTAL, Defendant–Appellee.

No. 88–K–2093.

Bankruptcy No. 87–B–13035 J.

Adv. No. 88 E 163.

United States District Court, D. Colorado.

May 4, 1990.

**700**

Ted W. Trauernicht, Trauernicht Hyman, P.C., Englewood, Colo., for Troy Davis Homes.

William D. Mulcahy, Brownstein, Hyatt, Farber & Madden, Denver, Colo., for American Continental.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The issue in this appeal is whether the bankruptcy court abused its discretion in imposing sanctions against the debtor's attorney for filing a fraudulent conveyance action under § 548 of the Bankruptcy Code.[1] Ted W. Trauernicht, on behalf of himself and his professional corporation, Trauernicht Hyman, P.C. (collectively, Trauernicht), argues that the bankruptcy court abused its discretion because the filing of the complaint was warranted by the facts and a good faith argument for the extension of existing law, and was not interposed for any improper purpose.

### I. *Facts.*

On or about October 30, 1987, the debtor, Troy Davis Homes, Inc. (TDH), filed for bankruptcy under Chapter 11 of the Code, later converting the case to a Chapter 7 liquidation. TDH was in the business of building homes. TDH had purchased from appellee American Continental approximately 100 developed, vacant lots. On June 30, 1986, TDH executed a note in favor of American Continental for $1,760,-000, secured by a deed of trust on the vacant lots. The deed of trust required TDH to obtain a release of any particular lot before beginning construction on it.

TDH alleged that it obtained American Continental's verbal permission to construct a single family home on one of the encumbered lots. When the home was completed, TDH entered into a contract with a third party for the sale of the home. It again requested that American Continental execute a partial release of the lot. Since TDH was in default on the note to American Continental, the lender refused to release the parcel and instead commenced foreclosure proceedings.

The foreclosure sale was conducted on September 23, 1987. A pre-foreclosure appraisal of the property indicated that the encumbered property, then consisting of 76 lots, had an aggregate value of $1,600,000. American Continental bid in this amount at the foreclosure sale and obtained title to the property on January 26, 1988.

On February 22, 1988, Trauernicht, on behalf of TDH, filed a "Section 548 Complaint." The complaint alleged that, of the 76 lots obtained by American Continental in

---

**1.** This section permits the trustee to set aside "any transfer of an interest of the debtor in property ... made or incurred on or within one year before the date of filing the petition" if the debtor "received less than a reasonably equivalent value in exchange" for the transfer *and* was insolvent when the transfer was made. 11 U.S.C. § 548(a)(2).

the foreclosure, 5 were improved. It further alleged that the pre-foreclosure appraisal did not take into account these improvements, valued at approximately $247,-000. Therefore, TDH claimed that it received less than reasonably equivalent value in exchange for the sale of the improved lots and that the conveyance of these lots should be set aside under § 548. TDH also filed a lis pendens against the 5 lots, giving notice that it had commenced suit and claimed an interest in them.

In its answer to TDH's complaint, American Continental admitted that one of the lots was improved and that four others had foundations for single family residences, but it denied that the foreclosure of these lots constituted a fraudulent conveyance under § 548. American Continental further asserted six counterclaims: one for the deficiency on the note, three for breach of contract (arising out of mechanic's liens filed against the property), one for slander of title and one for indemnification. TDH generally denied the allegations in its answer to the counterclaims.

On September 14, 1988, trial was held on TDH's complaint. During counsel's opening statement, the court requested Trauernicht to outline the evidence he would submit in support of TDH's claim. Mr. Trauernicht responded with a general description of factual and legal argument upon which the claim was based. After a colloquy involving counsel for both parties, the court dismissed TDH's complaint. Specifically, it found that Trauernicht's position in this case was "preposterous." Tr. Supp. Vol. I at 17. It further reasoned:

> The existence of the liens on the property does not sever the improvements from the property. The property remained—the lot and the residence remained subject to the deed of trust in favor of American Continental in the event of default by the plaintiff. The foreclosure, the deed of trust covers the land and covers any improvements that are thereafter made on the land, go to the benefit of the holder of the deed of trust. That the mechanic's liens might take priority over the value of the structure does not deprive Continental of having that prop-

> erty as collateral for its loan. That lot was never severed from the deed of trust. The evidence is that—or would be, if the case went to trial, that the plaintiff bid a million-six for property that had an aggregate value of maybe a million-seven. Under any conceivable statement, it is clear that Continental bid a fair value for the property that was encumbered by its deed of trust, which includes the accretion of the improvement on that lot.

*Id.* The court further found that, since TDH could redeem its property until the public trustee's deed issued (after TDH filed for bankruptcy), TDH suffered no loss before the filing of the petition as required by § 548. *Id.* at 18–20. Finally, the court imposed sanctions against Mr. Trauernicht for prosecuting the action. *Id.* at 22.

On October 28, 1988, Trauernicht filed a response to the court's order imposing sanctions and requested a hearing on the amount of the sanctions. In its written order of November 8, 1988 responding to the motion, the court further outlined its reasons for dismissing the complaint and awarding sanctions. *See* R.Doc. 17. It first cited TDH's failure to show evidence that it was insolvent at the time of the foreclosure, an essential element of a § 548 claim. *Id.* at 5. Further, the court noted that the deed of trust encumbered all the lots which had been foreclosed, and that there was no separate encumbrance as to the improved lots. *Id.* It chastised counsel for failing to allege that American Continental breached its contract by not releasing the improved parcel and for filing a lis pendens against the five lots. *Id.* at 5–6. Finally, it found "no justifiable basis upon which the Plaintiff could pursue its complaint and, based on the opening statement, it is clear that the Plaintiff appeared in this Court totally unprepared to prove that there was a transfer made at the time that the Plaintiff was insolvent which was subject to being set aside pursuant to the provisions of the Bankruptcy Code." *Id.* at 6. Trauernicht now appeals the court's imposition of sanctions.

## II. *Merits of Sanction Award.*

■ Bankruptcy Rule 9011 is patterned after Fed.R.Civ.P. 11.[2] It provides that appropriate sanctions may be imposed against an attorney who files a pleading that is not "well grounded in fact [or] warranted by law or a good faith argument for the extension, modification, or reversal of existing law ... [or that is] interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation." Bankr.R. 9011(a).

> The standard by which courts evaluate the conduct of litigation is objective reasonableness—whether a reasonable attorney admitted to practice would file such a document. If "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law...," then such conduct is sanctionable under Rule 11. The attorney must "stop, look, and listen" before signing a document subject to Rule 11.

*Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir.1988). A court's decision to impose sanctions is subject to review for an abuse of discretion. *Id.; see also Business Sys. Leasing, Inc. v. Foothills Automotive Plaza, Inc.,* 886 F.2d 284, 287 (10th Cir. 1989).

■ Mr. Trauernicht argues that since the complaint was filed with the reasonable belief that it was warranted by existing law or a good faith argument for the extension of existing law, it was not filed for an improper purpose nor did it otherwise warrant the imposition of sanctions. Thus, the primary issue in this case turns on the objective reasonableness of the legal theory underlying complaint: whether part of a foreclosure can be set aside under § 548 if a portion of the property conveyed in the foreclosure was transferred for less than reasonably equivalent value. Mr. Trauernicht asserts that *Hoffman v. Heritage Savings & Loan Ass'n (In re Garrison),* 48 B.R. 837 (Bankr.D.Colo.1985), and *Rags-*

*dale Bros. Roofing, Inc. v. United Bank of Denver, N.A.,* 744 P.2d 750 (Colo.Ct.App. 1987) support this proposition.

Trauernicht is nearly correct in asserting that *In re Garrison,* to a limited extent, supports his prosecution of this case. *In re Garrison* holds that a regularly conducted foreclosure sale and the issuance of a certificate of purchase after the sale can constitute a "transfer of an interest of the debtor" so as to be subject to the fraudulent conveyance provisions of 11 U.S.C. § 548. 48 B.R. at 839. Since *In re Garrison,* however, the Bankruptcy Code was amended to provide that the term "transfer" includes "foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(50). Thus, it is now clear that, if the other requirements of § 548 are met, a trustee can avoid the foreclosure of the debtor's property as a fraudulent conveyance under this section. But *In re Garrison* does not address whether § 548 can be used to set aside the foreclosure of *part* of the property subject to a deed of trust when that part was undervalued.

Trauernicht also cites *Ragsdale Bros. Roofing, Inc. v. United Bank of Denver, N.A.,* 744 P.2d 750 (Colo.Ct.App.1987) as support for his position that the filing of the complaint was not unreasonable. In *Ragsdale,* two parties filed mechanics liens for work they performed on a building. The land underlying the building was secured by a first and a second deed of trust. When the second deed of trust was foreclosed by holder, the holder argued that its interest was superior to the mechanic's liens. In holding that the mechanic's liens had priority, the *Ragsdale* court upheld the intent of Colo.Rev.Stat. § 38–22–103(2), which provides that "when a mechanic's lien is for work done or material furnished for any entire structure, such lien shall attach to such structure in preference to any prior lien or mortgage on the land upon which the building is erected." *Id.* at 752–53. Trauernicht contends that *Ragsdale* thus supports his theory that

---

**2.** Because Bankr.R. 9011(a) and Fed.R.Civ.P. 11 are nearly identical, I have cited cases construing Fed.R.Civ.P. 11 in this discussion.

under Colorado law, there is a distinction between liens that attach to land which attach to improvements on the land [and] [u]nder the *Ragsdale* rationale, it was reasonable for [Trauernicht] to argue that based on the equity in the family residence, the sale could be set aside for the benefit of the debtor's estate on the grounds that Defendant had not given reasonable, equivalent value for the family residence.

Trauernicht Opening Brief at 11.

Such an interpretation is aberrational. In its findings of fact and conclusions of law entered from the bench, the bankruptcy court found that *Ragsdale* was distinguishable because it dealt with the specific problem of mechanic's liens and the interpretation of conflicting statutes applicable to the foreclosure of such liens. *See* Tr. Supp. Vol. I at 16. The court's primary problem with the complaint in this case was that it attempted to sever the improved lots from the rest of the property secured by the deed of trust for the purposes of determining "reasonably equivalent value" under § 548. The bankruptcy court's reasoning that the piecemeal consideration of the value of individual properties secured by the deed of trust is inappropriate under § 548 is logical, but I have located no cases which specifically so hold.

American Continental points to *Pheney v. Western National Bank*, 762 P.2d 693 (Colo.Ct.App.1988), as such a case. In *Pheney,* the holder of a first deed of trust on certain property commenced foreclosure proceedings. The holder of the second deed of trust, which covered only part of the property encumbered by the first deed of trust, attempted to redeem only that portion. *Pheney* simply holds that the holder of a second deed of trust must redeem the entire property, not just that portion covered by the second deed of trust. Although dicta in *Pheney* suggests that this is to protect the holder of the first deed of trust from the "peril of the [public trustee's] underevaluation [sic] of that part of the property for which redemption is sought," *id.* at 696, this comment seems more addressed to the problem of requiring the public trustee to make a determination

as to a " 'pro rata' " redemption price. *Id. Pheney* does not suggest that the same considerations apply when a bankruptcy trustee brings an action under § 548 to recover property for the benefit of the estate, especially where a separate appraisal is conducted by an expert in preparation for litigation, not the public trustee.

In exercising its discretion, the bankruptcy court found that as an attorney and an officer of the court, Trauernicht had a duty to make a reasonable investigation of the facts and the law before filing the complaint. The court concluded that Trauernicht's legal theory was so unreasonable as to require the imposition of sanctions, especially given his attempt to convert the case on the day of trial into a breach of contract action based on allegations of fact which were never plead. Further, the bankruptcy court stated:

In this Court's view the Plaintiff's complaint constituted a clear abuse of the litigation process. By filing the complaint and recording a notice of lis pendens, the Plaintiff in this case effectively tied up five lots which were owned by the Defendant. That kind of unjustified economic duress is precisely the kind of violation that mandates the imposition of sanctions pursuant to Bankruptcy Rule 9011. There was obviously no justifiable basis upon which the Plaintiff could pursue its complaint and, based on the opening statement, it is clear that the Plaintiff appeared in the Court totally unprepared to prove that there was a transfer made at the time that the Plaintiff was insolvent which was subject to being set aside pursuant to the provisions of the Bankruptcy Code.

As previously stated, the question presented is whether the Bankruptcy Court abused its discretion in imposing the sanction it did against the debtor's attorney. As stated by the Tenth Circuit in *United States v. Wright*, 826 F.2d 938, 943 (1987), "[a]n abuse of discretion occurs when a judicial determination is arbitrary, capricious or whimsical. It is not merely an error of law or judgment, but an overriding of the law by the exercise of partiality,

704

prejudice, bias or ill-will as shown by evidence or the record of proceedings." Here, the bankruptcy court clearly articulated its reasons for imposing the sanction. The reasons were based on uncontradicted facts and there is no showing at all of partiality, prejudgment, bias or ill-will. Hence, there is no abuse of discretion.

IT IS ORDERED that the judgment of the Bankruptcy Court is affirmed.

DATED at Denver, Colorado this 3rd day of May, 1990.