**In the Matter of QUARTER MOON LIVESTOCK COMPANY, INC., an Idaho corporation, Debtors.**

**Bankruptcy No. 90–01326.**

United States Bankruptcy Court,
D. Idaho.

July 20, 1990.

Rodney T. Buttars, Boise, Idaho, for debtors.

Richard B. Eismann, Nampa, Idaho, for Carol Gilbert.

Barry Peters, Boise, Idaho, for trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

The Court has before it three motions in this Chapter 7 case. First, Carol Gilbert,

as custodian for certain minor shareholders of the Debtor-corporation (the "Gilberts"), has moved to dismiss the case. Second, the Trustee has filed a motion to temporarily operate the Debtor's ranching operation on a limited basis pending liquidation of the livestock. Finally, Trustee seeks authority to sell certain pieces of haying equipment. The Debtor and other stockholders have objected to the dismissal motion. Gilberts object to the sale of the equipment at the price offered. No party has objected to the proposal for the Trustee to operate the business assuming the case is not dismissed.

## FACTS

Quarter Moon was formed by two families, the Gilberts and the Addlemans. The Gilberts and Addlemans intended that each family would have equal ownership and management interests in the corporation. The stock in the company is held by the parties' children, with Mr. and Mrs. Gilbert and Mr. and Mrs. Addleman acting as custodians for the minors. There are 16 outstanding shares, with eight shares held by the children of each family. John and Carol Gilbert and La'Moyne and Patricia Addleman have, until recently, served as the four directors of the corporation. Gilberts were the principal operators of the business, which leased pasture from the Gilberts individually and paid them wages, with Addlemans supplying the accounting and bookkeeping services.

The company prospered until the death of John Gilbert in August of 1989. Over the next eight months the relationship between the Addlemans and Mrs. Gilbert rapidly and irrevocably deteriorated. Negotiations for the Gilberts' purchase of Addlemans' stock were unsuccessful. Communications subsequently broke down, heated words were exchanged, and the company's situation was generally unmanageable.

On March 31, 1990, at a special meeting of the Board of Directors, the Addlemans elected their nominee and attorney, Mr. Anderson, to the Board to fill the vacancy created by John Gilbert's death. Mrs. Gilbert did not participate in that meeting.

On April 20, the Gilberts filed suit against the Addlemans in Idaho state court requesting a judicial dissolution of the corporation and appointment of a receiver. They also asserted several claims against the Addlemans, personally, and the corporation. On April 21, after a shareholders' meeting adjourned without taking any action for failure of a quorum, the Addleman/Anderson Board directed that the company be dissolved through a bankruptcy proceeding. The Chapter 7 petition was filed on April 25.

## DISCUSSION

*Motion to Dismiss.*

Dismissal is sought by the Gilberts under Section 707(a) of the Code which provides:

### § 707. Dismissal.

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

The examples of "cause" listed in the statute are not exclusive. *See* 11 U.S.C. § 102(3); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 94 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5880, 6336.

Mrs. Gilbert offers two separate reasons allegedly warranting dismissal. First, she claims that under Idaho's corporate statutes the Addleman/Anderson Board was illegally constituted and also lacked authority to file the bankruptcy case without shareholder approval. Second, she urges that even if there was legal authority to file the bankruptcy, the petition should be

dismissed because it was not filed in good faith.

### 1. *Corporate Authority to File Bankruptcy.*

■ As has been noted by one court: Other than the requirement that the petition be a "voluntary" act, 11 U.S.C. § 301, the Bankruptcy Code does not establish what the internal requisites are for the initiation of a voluntary corporate bankruptcy proceeding. It is therefore appropriate to apply ... [the substantive law] of the state in which the Court sits regarding such requirements.

*In re Autumn Press, Inc.*, 20 B.R. 60, 61 (Bankr.D.Mass.1982). Simply stated, the authority to file a bankruptcy petition must be found in the instruments of the corporation and applicable state law. *In re Crescent Beach Inn, Inc.*, 22 B.R. 155 (Bankr. D.Me.1982). In accordance with this approach, Gilberts argue that the petition was filed without requisite corporate authority for at least two reasons which constitute cause for dismissal.

■ Initially, Gilberts claim all acts of the Quarter Moon Board of Directors, and the decision to file the bankruptcy in particular, are without authority. They contend that under the By–Laws of the corporation, the directors were elected to and hold illegal staggered terms. The By–Laws, adopted in 1984, provide for staggered terms for each of the initial four directors, with annual elections, so that at least one-fourth of the directorship will stand for election at each annual meeting. By–Laws, Article III, § 1(c) and (d). Directors shall continue to serve until a successor is properly elected. *Id.* No annual meetings have been held by Quarter Moon since 1986. Mr. and Mrs. Gilbert and Mr. and Mrs. Addleman continued to serve as directors until John Gilbert's death in 1989, at which time a vacancy occurred. Pursuant to notice and the terms of the By–Laws, Article III, § 8, attorney Anderson was elected by Mr. and Mrs. Addleman, and the three of them as directors constituted a quorum for purposes of authorizing the bankruptcy filing. *See* By–Laws, Article III, § 7(b).

Gilberts are correct that Idaho Code § 30–1–36 requires all directors to be elected at least annually. And they are correct that § 30–1–37 limits classification of directors (i.e. staggered terms) to those corporations where there are nine or more directors, and only then if authorized by the articles of incorporation, not the by-laws, of the company. Quarter Moon's documents were therefore not in compliance with the statutes. Such noncompliance, however, in the opinion of the Court, does not compel a holding that all actions taken by the Board were void, or even voidable, including the election of Mr. Anderson and the decision to seek bankruptcy liquidation under these facts.

The directors elected under the Debtor's By–Laws were at least *de facto* in status. Carol Gilbert must remember that she also was one of these "illegal" directors since the organization of the corporation in 1984. It is difficult for the Court to adopt an argument from one who has until recently actively participated in the bulk of its decisions that the Board's actions must be nullified. Carol Gilbert is charged with knowledge of the technical defect in the organization of the Board and could have initiated steps to correct it, or at least to have brought it to the attention of the others, prior to this time. Equitable considerations would therefore suggest she should not now be heard to complain.

Additionally, the evidence shows that annual shareholder meetings have not been held for several years. With such a record of failure to comply with corporate formalities, it is inconsistent now to retroactively invalidate the actions of the corporation simply because a dispute has developed between the shareholders. Even if the defect had been judicially challenged by Mrs. Gilbert, the most appropriate remedy would be an order compelling the corporation to bring its documents into compliance. As against third parties, such as corporate creditors (or their trustee), the corporation's actions should not be upset.

Gilberts also argue that Anderson was not properly elected since the Board had previously informally elected Lance Gilbert to the vacant position. This election, offered by Mrs. Gilbert's testimony as to events transpiring at a negotiation meeting in Jerome in December of 1989, was to be one term of an agreement supposedly reached whereby Gilberts would also buy Addlemans' shares. It is true that later the same month Mr. Addleman sent an annual corporate registration form to the Idaho Secretary of State's office showing Lance Gilbert as the fourth director.[1] However, Mrs. Gilbert also admits that she later repudiated the terms of the stock purchase arrangement, contending it had been "tenative" and that she felt it was unfair to her family. Mr. Addleman testified that Lance had been listed on the corporate form as a director solely in consideration of the anticipated stock purchase. He testified that when no agreement was consummated, he considered Lance's election to be ineffective.

Under the facts, any "election" held at the Jerome meeting was clearly conditional in nature. Mrs. Gilbert now contends no binding contract was achieved, and so the Court will not selectively enforce individual terms of the proposed stock purchase. In addition, the Court finds that no legally cognizable election of Lance Gilbert took place at the meeting.[2] The most that can be made of these facts is that there was an agreement to elect Lance to the Board at some time in the future upon closing of the stock purchase.

Gilberts attack the decision made by the Board to file the bankruptcy at the April 21, 1990, meeting for additional reasons. They claim that the Board meeting was noticed to its members as an "annual meeting", and not as a special meeting. They point out that the annual meeting of the Board is to be held following the annual stockholders' meeting. *See* By-Laws at Article III, Section 3(a). A quorum of stockholders did not appear for the annual meeting, so no action was taken. *See* Exhibit A, Minutes of Annual Meeting of Shareholders. Therefore, they argue, since no stockholders' meeting took place, there could be no annual directors' meeting to follow it. This means then that the meeting was actually a "special" meeting. And since the notice of the meeting did not specifically identify bankruptcy for the company as an item of business to be entertained, *see* By-Laws at Article III, Section 4, the action of the Board in authorizing the filing was ineffective.

The corporation complied with its By-Laws in conducting its annual stockholders' meeting. That a quorum did not appear, and that no action was therefore undertaken, does not mean there was no meeting. There is nothing in the By-Laws to suggest that lack of a quorum at the stockholders' meeting prevents existing Board members from conducting their annual directors' meeting, and the Court has not been provided with any authority for such a proposition. The By-Laws contemplate that the Board shall continue in the conduct of the company's business even though no stockholders' meetings are held. It is therefore reasonable to assume the directors can likewise hold an annual meeting even though the stockholders' meeting was not attended by a majority of the shareholders. The only restrictions on the annual directors' meeting in the By-Laws are that it be held immediately following and at the same place as the stockholders' meeting.

Gilberts also allege the decision of the Board to file a bankruptcy was in violation of the Idaho Model Business Corporation Act, Idaho Code §§ 30–1–1 *et seq.* In particular, they urge that the decision to file the petition constitutes a sale or dispo-

---

1. Interestingly, the corporate registration form was rejected by the Secretary of State based upon the prior failures of the corporation to file annual reports or pay fees. It therefore appears the form in question was never placed of record and no official reliance could have been placed upon its contents.

2. Actions may be validly taken by a board of directors without a meeting only if in writing setting forth the action taken signed by all of the directors. Idaho Code § 30–1–44.

sition of all or substantially all of the company's assets other than in the ordinary course of its business. Since the corporation was not insolvent at the time, the filing could only be authorized by the shareholders, and not the Board. Idaho Code § 30–1–79.

Counsel provided no Idaho authority for Gilberts' interpretation of the corporate statutes and the Court has located none in its own research. Likewise, the Court can find no cases dealing with this issue and section of the Model Act from other jurisdictions. Obviously, on the one hand, the decision to file bankruptcy may be of such importance so as to arguably require shareholder approval, although this corporation did not include such a requirement in its organizational documents. On the other hand, the Court feels it strains the purpose of the state statute to adopt such an interpretation.

Under Idaho law and the Model Act, it is the board of directors that is vested with authority to manage the affairs and business of a corporation. Idaho Code § 30–1–35. Shareholders' approval is only required for the extraordinary sale or disposition of all, or substantially all, of a corporation's assets. Idaho Code § 30–1–79. Such a disposition triggers "dissenters' rights". Idaho Code § 30–1–80. Under the Model scheme, in such event, the dissenting shareholder has the right to obtain payment for his shares. Under this procedure a shareholder either agrees to the sale, or he is presented with an opportunity to demand the purchase of his stock. The protections afforded by the statutes are not necessary, however, with respect to a decision to file for bankruptcy.

First of all, the state statutes make it plain that dissenters' rights are not triggered if the sale or disposition is "... pursuant to an order of a court having jurisdiction in the premises or a sale for cash on terms requiring that all or substantially all of the net proceeds of sale be distributed to the shareholders in accordance with their respective interests...." Idaho Code § 30–1–80(a)(2). In other words, there is no need to extend special protection to minority shareholders where the liquidation is either judicially supervised, or where there is to be a distribution of the sale proceeds in a manner which will fairly respect the stockholders' interests.

Beyond doubt, the provisions of the Bankruptcy Code will provide the Gilberts with ample protection of their shareholder rights. They are interested parties entitled to "notice and a hearing" respecting all sales of company assets by the bankruptcy trustee. *See* 11 U.S.C. § 363. All stockholders will receive distributions from the bankruptcy estate, after payment of creditor claims, according to their respective stock interests. *See* 11 U.S.C. § 726. This Court is readily available to intervene in the process to the extent a dispute arises between the parties. Clearly, the bankruptcy process is designed to promote the same goals as intended by the legislature under the state laws.

The Court simply does not feel it should employ an expansive reading of the state law in the absence of some direction from the Idaho courts.[3] Gilberts have provided authorities which have construed non-Model Act statutes in the manner they urge. *See, e.g., In re Quartz Gold Mining Co.,* 157 F. 243 (D.Ore.1907). However, the Court has located other decisions, once again based upon specific state statutes, which indicate that a bankruptcy filing may be authorized by the board alone. The United States Supreme Court's decision in *Royal Indemnity Co. v. American Bond & Mortg. Co.,* 289 U.S. 165, 53 S.Ct. 551, 77 L.Ed. 1100 (1933) states:

"We are told that this statute prohibits the filing of a voluntary petition in bankruptcy by authority of a resolution of the board of directors, and that a shareholders' vote is required to authorize such action. No case decided by the Maine courts is cited in support of this asser-

**3.** If the filing of a bankruptcy petition by a corporation is an event of such consequence to the shareholders, it is curious why it is not mentioned expressly in either the provision re-

quiring shareholder approval, Idaho Code § 30–1–79, or the provision providing for "dissenters' rights".

tion. But it is said that the filing of such a petition is a conveyance of all of the corporate property, and so plainly within the statutory prohibition. We cannot agree. ... [I]t seems too plain to need elaboration that the statute does not in terms affect the initiation of a bankruptcy proceeding, and was passed for a wholly different purpose."

*Id.* at 170–71, 53 S.Ct. at 554. *See also, Matter of High–Low Tank Car Service Stations, Inc.,* 254 F.2d 363 (7th Cir.1958); *In re Knox Consol. Coal Co.,* 50 F.2d 248 (D.C.S.D.Ind.1931); *In re Pneumatic Tube Steam Splicer Co.,* 60 F.2d 524 (D.C.Md. 1932). Gilberts' argument is not well taken.

### ·2. *Good Faith.*

■ It is beyond argument that a bankruptcy petition may be dismissed if it was filed in bad faith and contrary to the fundamental purposes and goals of the Code. 4 Collier on Bankruptcy, ¶ 707.03, 707–8–9 (15th ed. 1989). The definition of "bad faith" is, however, both elusive and elastic. As Collier suggests:

> Bad faith may be found when the debtor has a frivolous, noneconomic motive for filing a bankruptcy petition, when there is a sinister or unworthy purpose, or when there is an abuse of the judicial process. That the debtor is merely taking advantage of its legal rights is not, by itself, sufficient to support a finding of bad faith.

*Id.* at 707–9. The Congressional Reports make another point of the analysis clear: "The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal." H.Rep. No. 595 and S.Rep. No. 989, *supra.* The consideration of the bad faith argument requires an exercise of the discretion of the Court, after consideration of the totality of the circumstances. *In re Stolrow's, Inc.,* 84 B.R. 167 (9th Cir.B.A.P.1988); *In re Del*

*Rio Development, Inc.,* 35 B.R. 127 (9th Cir.B.A.P.1983).

■ The Gilberts' arguments were seriously considered by the Court. But, after a complete review of the evidence and facts, the Court is unwilling in this case to hold that the bankruptcy petition was filed with inappropriate goals by the Addlemans. Clearly, there are grounds to conclude that the deadlock existing between Gilberts and Addlemans was irresolvable and that dissolution of the company was the only realistic course of action. Gilberts have all but admitted as much by commencing the state court action. So while Gilberts and Addlemans are· quick to fix blame and to accuse one another of unfair conduct, objectively the corporation was incapable of operating in a reasonable manner.

Gilberts point to the fact that the company was solvent when it filed for bankruptcy as evidence of improper purpose. In addition, there can be little argument that the corporation could pay its obligations as they arose, although the evidence suggests a real difficulty in accomplishing payment given the dispute among management. These factors are relevant, but not dispositive. There is no "insolvency" requirement in the Bankruptcy Code for relief under Chapter 7. 11 U.S.C. § 109(b). Congress retained such a condition for relief under other chapters. 11 U.S.C. § 109(c).[4] While it is true this bankruptcy will not particularly enhance the rights of the company's creditors, who will surely be paid in full in any dissolution, the Addlemans' interests as stockholders are entitled to consideration. While it is true that one-half of the stockholders do not want to proceed in the bankruptcy arena, the other half evidently do.

The bulk of Gilberts' arguments are to the effect that the stockholders' (i.e. Gilberts') interests will be more properly protected in a state court dissolution proceeding. While such may be correct in some instances, the Court is unconvinced that it is true in this case. Realistically, each type

---

4. "... it is worthy of note that a chapter 7 'debtor' need not be insolvent to be eligible for chapter 7 relief. Nor does the standard established for those persons who 'may be' debtors under chapter 7 contain any specific or implied requirement that such persons be heavily burdened by debts." 2 Collier on Bankruptcy ¶ 109.02, 109–12 (15th ed. 1988).

of liquidation proceeding presents certain advantages and potential detriments. However, the various factors do not necessarily favor the state law process. Chapter 7 was carefully crafted by Congress to achieve a prompt, economical liquidation and a fair distribution of assets. The Trustee in this case is a professional, and the Court stands prepared to protect the interests of any party requiring it.

Dismissal here would place the Court in the position of substituting its judgment for that of at least half of the shareholders and a majority of the directors, a decision for which there are no compelling grounds. By contrast, if the case continues, Gilberts will enjoy substantial rights.

In summary, the filing of the bankruptcy was one of several alternatives available to the company and its owners, and Gilberts have not demonstrated that it was accomplished in bad faith, with improper motive, or by abuse of the judicial process.

### 3. *The State Court Action.*

■ Immediately prior to the filing of the bankruptcy petition the Gilberts filed an action in state court to appoint a receiver for the corporate assets, dissolve the company, and liquidate its assets. Obviously, there is no future for this corporation and the parties are merely arguing over whether state or federal law will control the liquidation process.

Gilberts insist there are substantial benefits to the state action, and that the shareholders' rights will be better protected in that forum. Mrs. Gilbert testified that a possible scenario to be offered to the state court would be to liquidate sufficient assets to pay all creditor claims and to "cash out" the Addlemans' equity in the company, with the remaining items of property to be distributed to the Gilberts so the cattle ranching business could continue. The success of such an approach would require Gilberts to convince the state court that such is a desirable and legal alternative, potentially over the objection of Addlemans.

This Court is unpersuaded that the state court action offers any decided advantage to a federal bankruptcy proceeding given the dispute pending between the stockholders. If something other than a straight liquidation is desired, Gilberts' attention is directed to Section 706(b) of the Code which would allow them to move for conversion of this proceeding to a Chapter 11 case. If the motion is granted, they could then propose a plan for disposition of the corporate assets and settlement of the creditor and shareholder interests. *See* 11 U.S.C. §§ 1121, 1123, 1129. If cause exists, an independent trustee can be appointed to manage the corporate assets pending confirmation. 11 U.S.C. §§ 1104, 1106. If claims are available to the company against Addlemans or others, the Trustee can prosecute those actions. In summary, there are a variety of approaches and protections available to Gilberts within the context of the bankruptcy case if they desire to access them.

No motion to abstain is properly before the Court. *See* 11 U.S.C. § 305; 28 U.S.C. § 1334(c). Gilberts' counsel has advocated the concept in arguments to the Court. For the reasons stated above, abstention is not in the best interests of the parties, justice, or comity with the state courts.

### 4. *Summary.*

The Court finds that Gilberts have not shown adequate "cause" to warrant dismissal of this case, and therefore the motion to dismiss will be denied.

### *Trustee's Motions.*

Since this case will continue, the Court must dispose of the Trustee's motions concerning administration of the bankruptcy estate.

■ Trustee has filed a motion for authority to operate the Debtor's business under certain limited conditions pursuant to Section 721 of the Code. Briefly, this will allow him to wait until fall to roundup and sell the cattle herd, and to maintain the livestock until that time. No party has objected to the substance of this motion, and the Court finds merit in the Trustee's suggestions. Therefore, this motion will be granted as requested.

Trustee also seeks authority to sell three items of farm equipment for $35,000 cash. Gilberts have objected and seek an order from the Court requiring the Trustee to make a more concerted effort to find a buyer at a higher price. The Court listened to Gilberts' valuation witness who indicated that the equipment could be worth as much as $43,000. Trustee is convinced that the present cash offer is a reasonable one.

After consideration of the evidence and testimony, the Court is not persuaded that the Trustee's business judgment should be disturbed in this case. While it is true that *perhaps* with more time and effort a higher price might be obtained, there is no guarantee. In fact, it appears there is considerable risk that if this haying equipment is not sold at this time, its value in the market may be reduced due to a lack of demand. In summary, the Trustee's decision to accept the cash offer is certainly within reason under the facts, and the Court will defer to his judgment.

Counsel for Trustee shall submit separate orders in accordance with this decision. This decision shall serve as the Court's findings of fact and conclusions of law. *See* Bankruptcy Rule 7052.