In re YELLOW CAB COOPERATIVE ASSOCIATION, Debtor.

John B. KUSIC, Appellant,

v.

Karen J. MATHIS, Receiver, Appellee.

Civ. A. No. 92–K–624.
Bankruptcy No. 92–26647 PAC.

United States District Court,
D. Colorado.

Sept. 9, 1992.

John B. Kusic, pro se.

Vicki S. Porter, Denver, Colo., for Karen Mathis.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This is an appeal from a bankruptcy court order imposing Rule 11 sanctions against the debtor's attorney, John B. Kusic. Kusic argues that the bankruptcy court erred in finding that he had not conducted a reasonable inquiry into the facts surrounding the filing of the Chapter 11 petition by members of a cooperative association and that the filing was not warranted by existing law or a good faith argument for its extension. I affirm.

### I. *Facts.*

This case arises out of a heated contest between members of the Yellow Cab Cooperative Association and its former board of directors. On April 29, 1991, the state court appointed Karen J. Mathis to act as receiver for the Cooperative. In addition to the customary powers of a receiver, Ms. Mathis' was also ordered to conduct and certify the election of a new board of directors. As part of this process, Ms. Mathis was required to determine the ·actual membership of the Cooperative eligible to vote in the election. This took longer than anticipated. The election was finally held on July 12, 1991 and certified to the state court on July 15, 1991. The new board, however, was not immediately seated.

Frustrated by the delay in seating the new board, former and current members of the Cooperative, represented by Mr. Kusic, decided to file a voluntary petition in bankruptcy on behalf of the Cooperative. The petition was filed on December 19, 1991 by Leroy Jones on behalf of 236 other purported members of the Cooperative. Mr. Kusic also signed the petition, and he later obtained court approval to represent the debtor. In a separate pleading, Jones represented that the 236 members who authorized the filing constituted a majority of the active members of the Cooperative. Jones also stated that these members had the authority to file the petition because

the state court had delayed seating of the board, preventing a semi-annual meeting of the membership to authorize the filing of the petition "in a traditional manner." (R.Vol. I, Doc. 2 at 1.)

On December 20, 1991, Mathis and the First Interstate Bank of Denver, N.A., one of the Cooperative's largest secured creditors, moved to dismiss the bankruptcy case. They alleged that the filing of the petition was not properly authorized under state law or the Cooperative's articles of incorporation and bylaws. Under these provisions, they asserted, the power to file a petition resides with the Cooperative's board of directors. They attached the affidavits of a majority of the new board of directors, which indicated that the board would not support the filing. By order dated December 20, 1991, the bankruptcy court granted the motion to dismiss, finding that it had no jurisdiction under 11 U.S.C. § 109 because the petition was filed without the proper authority.

On February 4, 1992, Mathis moved for the imposition of sanctions against Kusic under Bankr.R. 9011. In its findings entered at the conclusion of the hearing on the motion, the bankruptcy court ruled that Kusic had not made a reasonable investigation into the status of the 236 members on whose behalf he acted. The court also held that Kusic did not adequately determine the legal basis for filing the petition. Kusic was unable to recite any authority (even when granted a continuance to do so) for the proposition that a majority of the Cooperative's members could file the petition absent a resolution by the board of directors. For these reasons, the bankruptcy court ordered Kusic and his firm, Nicholls & Kusic, to pay Mathis' attorney fees. That order was later modified to impose liability only against Kusic individually. Kusic now appeals.

### II. *Merits.*

Bankruptcy Rule 9011(a), which makes provisions of Fed.R.Civ.P. 11 applicable to bankruptcy proceedings, requires the bankruptcy court to impose sanctions against an attorney or other party who files a pleading that is not "well grounded

in fact [or] warranted by law or a good faith argument for the extension, modification, or reversal of existing law." Bankr.R. 9011(a); *see also Troy Davis Homes, Inc. v. American Continental (In re Troy Davis Homes, Inc.)*, 113 B.R. 699, 702 (D.Colo.1990). Thus, the rule requires an attorney to conduct a reasonable investigation into the legal and factual grounds underlying a pleading. The standard under this rule is an objective one and requires reasonableness under the circumstances. *See White v. General Motors Corp.*, 908 F.2d 675, 680 (10th Cir.1990); *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir.1988). The bankruptcy court's decision to impose sanctions is reviewed for an abuse of discretion, *see In re Troy Davis Homes, Inc.*, 113 B.R. at 702, although its underlying factual findings are upheld unless clearly erroneous, *see Endrex Invs., Inc. v. Mauna Lani Resort, Inc. (In re Endrex Invs., Inc.)*, 111 B.R. 939, 945 (D.Colo.1990).

Kusic takes issue with both the court's findings that he had not undertaken an adequate factual investigation of the membership status of the persons he represented or analyzed the legal merit of his contention that his clients had the authority to file a voluntary petition on behalf of the Cooperative. He makes two arguments. First, he asserts that the 236 persons he represented could be considered members of the Cooperative if the court adopted an interpretation of the Cooperative's bylaws that draws a distinction between "membership" and "membership interest." Second, he contends that his view that these persons had the power to file a voluntary petition on behalf of the Cooperative absent an active board of directors was a

good faith argument for the extension of existing law. Kusic misses the point.

The question before the court is whether at the time he signed and filed the petition Kusic made a reasonable effort to establish the factual and legal basis for the pleading. By making the above arguments, Kusic attempts an *ex post facto* justification of his actions. The record is clear, however, that Kusic had neither investigated the membership status of the persons he represented nor identified any legal authority for his contention that these persons had the authority to file a petition on behalf of the Cooperative before the petition was filed or during the hearing on the motion to dismiss.[1]

Moreover, to the extent that Kusic's post hoc arguments can be considered, they are unconvincing. The pertinent inquiry, for the purposes of Kusic's theory of a derivative bankruptcy filing, is whether the persons he represented would have had authority to vote in a shareholder meeting for the initiation of bankruptcy proceedings. Whether these persons retain a "membership interest" is irrelevant, except perhaps insofar as they may be considered creditors entitled to file an involuntary petition. Kusic conceded, however, that he had no authority to file an involuntary petition on behalf of his clients. Thus, the court correctly focused on provisions of Articles II and VIII of the bylaws which distinguish between active and inactive members and their entitlement to vote.

More importantly, case law casts serious doubt on Kusic's theory that members of a cooperative association, the equivalent of shareholders of a corporation, may file for bankruptcy derivatively. Although Kusic

---

1. For example, when asked whether his clients were members of the Cooperative under the definition of that term contained in the bylaws, Mr. Kusic replied, "To be honest, I don't know, Your Honor. They signed it as members. Whether they are or not, I don't know." (R.Vol. II at 11; *see also id.* at 22). He made no attempt to ascertain the status of these persons as determined by the receiver, relying instead on each individual's certification that they were members or creditors. (*See id.* at 12.) He did not raise the "member," "membership interest" dichotomy argued here.

Likewise, when asked by the court what authority supported his belief that the shareholders could act in absence of a seated board, Kusic was unable to locate the statute he relied upon. (*See id.* at 23, 24.) After a brief continuance to permit counsel to have more time to locate the statute, Kusic admitted "I at this juncture do not have the appropriate case law to make any kind of intelligent decision." (*Id.* at 28.)

argues that there is no case law on point, a nearly identical situation occurred in *Price v. Gurney*, 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776 (1945), a case decided under the former Bankruptcy Act. There Gurney, the owner of stock in the debtor Ohio corporation, filed a Chapter X bankruptcy petition (a precursor to Chapter 11) as agent for owners of a majority of the corporation's stock. The company was facing foreclosure of its bonds. Gurney alleged that the bankruptcy filing was necessary to protect the shareholders' equity in the corporation, which would be lost in the foreclosure. *Id.* at 102, 65 S.Ct. at 515. He also alleged that this action by the shareholders was proper because the corporation's board of directors was unlawfully elected, the corporation was without a *de jure* board, and existing board members were in breach of their fiduciary duties. *Id.*

The Supreme Court rejected this attempt by shareholders to act on behalf of the corporation. First, it dispelled the notion that a bankruptcy filing could be considered a derivative action:

> There is a misconception running through the presentation of this case which should be noted at the outset. It is a misnomer to speak of the filing of the petition on behalf of the corporation as a derivative action. A derivative action is a suit by a shareholder to enforce a corporate cause of action. The corporation is a necessary party to the suit. And the relief which is granted is a judgment against a third person in favor of the corporation. That is the rule in Ohio as well as elsewhere. Similarly if a corporation has a defense to an action against it and is not asserting it, a stockholder may intervene and defend on behalf of the corporation. Moreover, equity has evolved numerous remedies to protect not only the rights of the corporation but the interests of the stockholders as such against various acts of mismanagement. But respondents have not pursued either course. The petition which they have filed with the bankruptcy court is not a suit to enforce or protect a corporate right. Nor is it a suit to

protect the interests of respondents as stockholders.

*Id.* at 105, 65 S.Ct. at 516 (citations omitted). The Court held that, in absence of federal incorporation, it must look to state law to determine whether a bankruptcy petition is filed by a person with authority to do so:

> [N]owhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation. Respondents may have a meritorious case for relief. On that we intimate no opinion. But if they are to be allowed to put their corporation into bankruptcy, they must present credentials to the bankruptcy court showing their authority.

*Id.* at 107, 65 S.Ct. at 516–17.

Although *Price v. Gurney* is a pre-Code case, it is still good law. Like in *Price v. Gurney*, cases decided under the Bankruptcy Code look to state law and instruments of incorporation to determine whether a petition is filed with the proper corporate authority. *See, e.g., In re Quarter Moon Livestock Co.*, 116 B.R. 775, 778 (Bankr.D.Idaho 1990) ("Simply stated, the authority to file a bankruptcy petition must be found in the instruments of the corporation and applicable state law."); *In re Giggles Restaurant, Inc.*, 103 B.R. 549, 553 (Bankr.D.N.J.1989) (citing and applying rule of *Price v. Gurney*); *In re Acoustic Fiber Sound Sys., Inc.*, 20 B.R. 769, 777–78 (Bankr.S.D.Ind.1982) (looking to state law and incorporation documents to determine that replacement directors were not properly elected at shareholders meeting and lacked authority to file petition).

In this case, Kusic's sole basis for assuming his clients had the authority to file a petition was Colorado's statute permitting shareholder derivative actions, *see* Colo.Rev.Stat. § 7–4–121 (1986). Under *Price v. Gurney*, that is not enough. While it may be unclear whether the for-

mer board of directors, the receiver or the replacement board of directors had the power to file a petition, that power did not reside with the shareholders. *Compare Larson v. Kreisers, Inc. (In re Kreisers, Inc.),* 112 B.R. 996 (Bankr.D.S.D.1990) (corporation's directors could file for bankruptcy despite state receivership); *In re Greater Atlanta Apartment Hunter's Guide, Inc.,* 40 B.R. 29 (Bankr.N.D.Ga.1984) (under Georgia Law, directors previously serving on behalf of corporation in receivership could authorize filing); *United States v. Vangard Inv. Co.,* 667 F.Supp. 257, 259 (M.D.N.C.1987), *aff'd,* 907 F.2d 439 (4th Cir.1990) (corporation's president had no authority to file for reorganization of corporation in federal receivership).

### III. *Conclusion.*

The standard for the imposition of sanctions is an objective one. Kusic's good faith belief that a derivative filing was possible because there was no direct authority to the contrary is factually incorrect, *see Price v. Gurney,* 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776, and legally irrelevant, *see White v. General Motors Corp.,* 908 F.2d at 680. The standard is "whether a reasonable and competent attorney would believe in the merits of an argument." *Dodd Ins. Servs. v. Royal Ins. Co. of Am.,* 935 F.2d 1152, 1155 (10th Cir.1991). The bankruptcy court did not abuse its discretion in concluding that Kusic's conduct failed under this standard. *See In re Omega Trust,* 110 B.R. 665, 672 (Bankr. S.D.N.Y.) (sanctioning attorney who failed to provide any case law in support of defective theory that trust beneficiary was empowered to file bankruptcy petition), *aff'd in relevant part,* 120 B.R. 265 (S.D.N.Y. 1990).

At the hearing, counsel for the receiver asked for permission to file a motion for additional sanctions because the appeal is frivolous, without merit or made in bad faith. While I think Mr. Kusic was clearly wrong, I am not prepared to find the appeal frivolous, without merit or made in bad faith. The gravamen of his actions, as I see it, is the attempt to use the bankruptcy court to interfere with or disrupt the legitimate processes of a state receivership action. His action has adverse implications for the entire concept of comity. The award of sanctions against an attorney personally, however, is a developing area of our jurisprudence such as to justify an appeal in most circumstances. Accordingly,

The judgment of the bankruptcy court imposing sanctions is AFFIRMED; the motion for additional sanctions is DENIED.