Harold KUNZ, Plaintiff–Appellant,

v.

CYCLES WEST, INC., a Colorado corporation, and Pete Lobato, and Vaughn C. Richards, Defendants–Appellees.

No. 97CA1385.

Colorado Court of Appeals, Div.I.

Oct. 15, 1998.

As Modified on Denial of Rehearing Dec. 3, 1998.

Sonheim, Helm, Less & Williams L.L.P., Dale H. Helm, Arvada, for Plaintiff–Appellant.

Bowman and Bowman, Arthur S. Bowman, Jr., Denver, for Defendants–Appellees.

Opinion by Judge PLANK.

Plaintiff, Harold Kunz, appeals the amount of a judgment in his favor. We affirm in part, reverse in part, and remand.

Plaintiff and defendant Cycles West, Inc. (the corporation), entered into a five-year commercial lease for retail sales purposes. The co-defendants, Vaughn C. Richards and Pete Lobato, officers of the corporation, each gave a personal guaranty of the lease. The lease required escalating monthly rent payments, plus an annual payment to reimburse plaintiff for a pro rata share of the real estate taxes attributable to the leased premises.

The corporation defaulted on the rent payments and was evicted approximately three years after the commencement of the term of the lease. In 1995, prior to the eviction, the corporation gave plaintiff two post-dated checks for payment of the 1994 taxes under threat of eviction if the taxes were not paid. The checks identify the account owner as Cycles West, Inc., and were signed by co-defendant Vaughn C. Richards, president of the corporation. The checks were apparently presented for payment on or after their face dates, and each was twice returned for insufficient funds.

Plaintiff gave notice of the returned checks to the corporation at its last known address pursuant to § 13–21–109(3) and 13–21–109(4), C.R.S.1998. The corporation did not thereafter pay the amount of the checks plus allowable costs to plaintiff.

Prior to trial, all defendants confessed judgment for unpaid rent and various costs, and the trial to the court proceeded only on the issues of whether the defendants were liable for the real estate commissions incurred by plaintiff in reletting the premises, whether the defendants were liable for the cost of tenant finish furnished by plaintiff to induce a new tenant to lease the premises, and whether the corporation and defendant

Richards, its president, were liable for treble damages on the insufficient funds checks pursuant to § 13–21–109, C.R.S.1998.

The trial court entered judgment for the plaintiff and against all defendants jointly and severally on plaintiff's claim for reimbursement of real estate commissions paid to relet the premises. Finding there was insufficient evidence to permit proper apportionment of plaintiff's costs for tenant finish to induce the new tenant to lease the premises, the trial court denied plaintiff reimbursement for those costs. Finally, the trial court entered judgment for plaintiff and against only the corporation on the claim of treble damages for the insufficient funds checks pursuant to § 13–21–109, C.R.S.1998.

Plaintiff now appeals the denial of his claim for reimbursement of tenant finish costs and the denial of his claim for treble damages on the bad checks against defendant Richards individually.

I.

Plaintiff contends that the lease obligates the corporation, and the individual defendants as guarantors, to pay his costs for tenant finish incurred as an inducement to the new tenant of the premises. Defendants contend that they are not liable for the tenant finish costs incurred by plaintiff because those costs are not damages incurred as a result of the corporation's default but were ordinary costs associated with obtaining a new tenant. We agree with plaintiff.

■ A commercial lease is both a conveyance of an interest in real property and a contract. *Schneiker v. Gordon*, 732 P.2d 603 (Colo.1987). An unambiguous provision of a lease, as with any contract, will generally be enforced as written. A provision of a lease is ambiguous if it is fairly susceptible to more than one interpretation, but mere disagreement between the parties as to the interpretation of a term of a lease does not create an ambiguity. *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371 (Colo.1990).

The provision of the lease at issue here states in pertinent part that, upon the corporation's default:

Lessor shall be entitled to recover form [sic] Lessee all damage incurred by Lessor by reason of Lessee's default including, but not limited to ... expenses of reletting, including necessary renovation and alteration of the Premises. . . .

We find this provision of the lease to be unambiguous and, therefore, must enforce it as written. *See Fibreglas Fabricators, Inc. v. Kylberg, supra.* Under the provision's express language, upon the corporation's default, it and the individual defendants as guarantors must pay plaintiff's costs of renovation and alteration necessary to relet the premises.

■ Defendants, however, argue that the tenant finish costs are not damages incurred by plaintiff as a result of the corporation's breach of the lease but are instead an ordinary cost of reletting the premises, whether upon the corporation's default or at the conclusion of the lease term. Citing *McDonald's Corp. v. Brentwood Center, Ltd.*, 942 P.2d 1308 (Colo.App.1997), defendants assert that plaintiff is entitled to recover only an amount sufficient to put him in the same position he would have been in absent the breach, not the full amount expended for tenant finish. However, it is not disputed that plaintiff paid more than $17,000 for renovation and alteration to induce a new tenant to lease the premises, nor is it disputed that plaintiff would not have been required to expend that sum at that time but for the corporation's breach of the lease. We therefore conclude that, in accordance with the express terms of the lease, the tenant finish costs are damages incurred by plaintiff as a result of the corporation's breach of the lease, and plaintiff is entitled to recover that amount.

■ Defendants also argue that the provision of the lease requiring payment for plaintiff's renovation and alteration costs is essentially an unenforceable penalty analogous to an excessive liquidated damages clause. However, the lease provision at issue is not one for liquidated damages because no specified or ascertainable amount was established by the terms of the lease at the time of its execution. *See Dikeou v. Dikeou*, 928 P.2d 1286 (Colo.1996).

Therefore, it was error for the trial court to decline to award plaintiff his necessary costs for renovation and alteration to induce a new tenant to lease the premises following the corporation's default.

## II.

Plaintiff next contends that the trial court erred by not awarding him treble the face amount of the bad checks against both the corporation and the individual corporate officer, jointly and severally, rather than against only the corporation. We disagree.

Section 13–21–109, C.R.S.1998, states in pertinent part:

(1) *Any person who obtains money, merchandise, property, or other thing of value, or who makes any payment of any obligation* . . . by means of making any check . . . which is not paid upon its presentment is liable to the holder of such check . . . for one of the following amounts, at the option of the holder or such assignee:

. . . .

(c) An amount as provided in subsection (2) of this section.

(2)(a) If notice of nonpayment on presentment of the check . . . has been given . . . and the total amount due as set forth in the notice has not been paid within fifteen days after such notice is given, instead of the amounts set forth in paragraph (a) or (b) of subsection (1) of this section, the person shall be *liable to the holder or any assignee for collection for three times the face amount of the check* but not less than one hundred dollars. (emphasis added)

■ Generally, a corporate officer acting in his or her representative capacity and within his or her actual authority is not personally liable for such representative acts unless acting on behalf of an undisclosed principal. *Masinton v. Dean*, 659 P.2d 50 (Colo.App.1982). In particular, to avoid personal liability for a check drawn on a corporation, an authorized officer thereof need not state his representative capacity. Section 4–3–402(b), C.R.S.1998.

■ Even when a person or business is not initially aware that it is dealing with a corporation, a course of dealing involving the consistent payment of corporate obligations with checks identifying the corporation by its name, including the abbreviation "Inc.," is sufficient to disclose that the signer of such checks is acting as a representative of a corporation. *Masinton v. Dean, supra.*

However, plaintiff cites *Mountain States Commercial Collections, Inc. v. 99 Cents Liquidators, Inc.*, 940 P.2d 934 (Colo.App.1996) for the proposition that the treble damages provision of § 13–21–109(2)(a), C.R.S.1998, is applicable to both the corporation itself as well as an individual corporate officer who signs the check. While it is true that the majority opinion in *Mountain States* does so hold, we note that § 4–3–402(c), C.R.S.1998, was not in effect at the time the checks at issue there were executed.

Section 4–3–402(c), C.R.S.1998, states that:

If a representative signs the name of the representative as drawer of a check without indication of the representative status and the check is payable from an account of the represented person who is identified on the check, the signer is not liable on the check if the signature is an authorized signature of the represented person.

■ By this language, the General Assembly has directed that an authorized corporate officer who signs his or her own name to a check issued on an account of a corporation is not liable for that check so long as the corporation is identified as the owner of the account on the check. It would be incongruous for a corporate officer to be relieved of personal liability on a check pursuant to § 4–3–402(c), but still be liable for three times the face amount of the check pursuant to § 13–21–109(2)(a).

To harmonize the statutes, we conclude that the General Assembly intended that the phrases "any person," "the person," and "the maker" in § 13–21–109 refer to the corporation when the owner of the account is a corporation and the signature on the check is that of an authorized corporate officer.

Here, it is undisputed that the obligation to be paid by the bad checks was that of the corporation arising under the terms of the lease, and that the corporation attempted to

pay the obligation with checks identifying the corporation as the account owner and signed by an authorized corporate officer, defendant Richards. Moreover, even if plaintiff had not been aware that he had leased the premises to a corporation, the record supports the conclusion that the corporation consistently made rent payments and the tax payments for prior years with corporate checks, sufficient to establish that plaintiff knew or should have known he was dealing with a corporation. *See Masinton v. Dean, supra.*

We therefore hold that defendant Richards is not personally liable for either the face amount of the insufficient funds checks, pursuant to § 4–3–402(c), or for treble damages, pursuant to § 13–21–109(2)(a).

That part of the judgment denying an award for reimbursement of tenant finish costs is reversed, and the cause is remanded to the trial court to enter judgment in favor of plaintiff and against defendants in the amount of $17,453, plus interest and costs to be determined upon remand. The remainder of the judgment is affirmed.

METZGER and ROTHENBERG, JJ., concur.