In re Ralph T. LEONARD; Russell K. Myers; Paul E. Enzman; John R. Klaas; Michael E. Hogan; Ivan Roth; John R. Towner; Ronald Coffin; Alvin G. Larch; Paul R. Bishop; Ervin Rhoades; Henry Allen Prichard; Ralph Nelson; Darrell O. Porter; Larry Jacks; Leann Sandoval; Jennifer Clair; Merle W. Kiesel; Ryan Tarone; Cynthia Garcia; Yvonne Carsten; Rene Easter; Darlene Nicholas; Larry L. Weickum; Anthony A. Sanchez; Todd Stroh; William J. Crackel; Gene Dutton; Guy Cook; Rick Long; Tom Gardner; Dennis Craig; Clifford Elrod; Virgil Eggleston; James Goerig; Doug Hanevik; Donald Kneebone; Greg Cole; Tony Kmoch; Frank Hill; Michael Luxner; Creed Huff; Terry Harvey; Robert Wagenknecht; Steven G. Larghe; Richard Echtenkamp; Melvin G. Teter; Tyler U. Iungerich; Ronald F. Cooley; David Capshaw; Charles Bleakley; Larry Jones; Ted Schwartz; and Evan Howard, Plaintiffs–Appellees,

v.

Jerry D. McMORRIS; Harold R. Roth; George R. Roberge; James R. Feehan; Mike Hampton; Lester Smith; Neal Barkley; Robert Cline; Cal Wolfe; and Terry Jensen, Defendants–Appellants.

No. 01SA380.

Supreme Court of Colorado, En Banc.

Feb. 3, 2003.

Rehearing Denied Feb. 24, 2003.*

* Chief justice MULLARKEY, Justice MARTINEZ and Justice BENDER would grant the Petition.

Law Offices of Evan S. Lipstein, P.C., Evan S. Lipstein, Michael B. Levy, Lakewood, CO, Dyer & Shuman, LLP, Kip B. Shuman, Jeffrey A. Berens, Denver, CO, Attorneys for Plaintiffs–Appellees.

Arnold & Porter, James E. Scarboro, Timothy R. Macdonald, Denver, CO, Attorneys for Defendant–Appellants.

The Temple Law Offices, LLC, Dana A. Temple, Denver, CO, Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, s.c., Frederick Perillo, Milwaukee, Wisconsin, Attorneys for Amicus Curiae for International Brotherhood of Teamsters.

Justice HOBBS delivered the Opinion of the Court.

Pursuant to C.A.R. 21.1, the United States Court of Appeals for the Tenth Circuit certified to us the following questions of Colorado law:

1) Are officers of a now-bankrupt corporation individually liable for the wages of the corporation's former employees under the Colorado Wage Claim Act, Colo.Rev.Stat. § 8–4–101 *et seq* (1999)?

2) If so, are all officers individually liable due to mere status as officers or must the officers have been high ranking or active decision-makers?

*See Leonard v. McMorris,* 272 F.3d 1295 (10th Cir.2001).

Upon acceptance of the certified questions, we reframed the questions and directed the parties to brief the following four issues:

1) Whether officers of a corporation are individually liable for the wages of the corporation's former employees under the Colorado Wage Claim Act, Colo.Rev.Stat. § 8–4–101 *et seq.* (2001);

2) If so, whether all of the corporation's officers are individually liable or only the officers who have been high ranking or active decision-makers;

3) If so, whether the Colorado Wage Claim Act imposes personal liability on officers when the corporation declares bankruptcy; and,

4) If so, whether the Colorado Wage Claim Act's "good faith legal justification" clause is a defense to the officer's personal liability to former employees under the Act when the corporation files for bankruptcy.

We answer our reframed first question as follows: No, under Colorado's Wage Claim Act, the officers and agents of a corporation are not jointly and severally liable for payment of employee wages and other compensation the corporation owes to its employees under the employment contract and the Colorado Wage Claim Act. Our answer is dispositive of the two questions the Court of Appeals for the Tenth Circuit certified to us, and we return this case to that court for further proceedings.

I.

The plaintiffs in this case (Leonard) are former employees of NationsWay. The defendants (McMorris) were corporate officers of NationsWay. NationsWay was one of the largest privately held trucking companies in the United States. In May of 1999, NationsWay had more than 3,200 employees in forty-three different states.

On May 20, 1999, NationsWay filed a petition for bankruptcy protection pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona. Harold Roth, Senior Vice President and William Ward, Senior Vice President, filed the petition on behalf of the corporation. On February 11, 1999, NationsWay's board of directors had given these two officers the authority to file the petition if, and when, they determined it was necessary in the best interest of the corporation. After filing the bankruptcy petition, NationsWay terminated many of its employees and did not pay wages and other compensation that became due after the petition's filing, because the Bankruptcy Code's automatic stay provision prevented the corporation from making these payments. 11 U.S.C. § 362(a) (2002).

The NationsWay bankruptcy proceeded as a Chapter 11 liquidation and the United States Bankruptcy Court confirmed NationsWay's Chapter 11 plan on October 13, 2000. The employees received, as a result of the Chapter 11 proceeding, approximately $3.0 million in December of 2000 and an additional $350,000 in August of 2001. Leonard claims that the officers of NationsWay are personally liable to pay the difference between what the employees received in the bankruptcy proceeding and the remaining

amount of unpaid wages, benefits, and other compensation that NationsWay did not pay them, amounting to approximately $12 million, plus penalties and attorney's fees.

Leonard originally brought this action in a Colorado district court. McMorris removed it to the Federal District Court for Colorado. The Federal District Court, on summary judgment, found eight officers personally liable for unpaid wages and other compensation. *Leonard v. McMorris*, 106 F.Supp.2d 1098 (D.Colo.2000).

The Federal District Court relied on three provisions of the Wage Claim Act: 1) section 8–4–101(6), 3 C.R.S. (2002), which includes officers in the definition of employer; 2) section 8–4–104(1)(a), 3 C.R.S. (2002), which states that wages for services earned and unpaid are due and payable immediately when the relationship is interrupted at the volition of the employer; and 3) section 8–4–104(3), 3 C.R.S. (2002), which states that if an employer refuses to pay wages without a good faith legal justification, the employer is liable to the employee for a penalty of fifty percent of the compensation due.

On interlocutory appeal, when the case went from the Federal District Court to the United States Court of Appeals for the Tenth Circuit, that court certified its questions of Colorado law to us because of lack of controlling precedent, and we agreed to exercise our C.A.R. 21.1 jurisdiction. *See Leonard*, 272 F.3d at 1295–97.

## II.

■ Leonard contends that the plain language of Colorado's Wage Claim Act imposes individual liability on all corporate officers and agents, in all circumstances, for payment of the wages and other compensation the corporation does not pay to employees. We disagree. The plain language of the Wage Claim Act does not say this. In support of the employees' argument, Leonard places reliance on the definition of "employer" in the Wage Claim Act.

However, we find the Colorado Wage Claim Act's definition of "employer" to be ambiguous on the question of personal officer and agent liability. Upon review of the language, design, purpose, and construct of Colorado's Wage Claim Act, we conclude that the General Assembly did not intend to impose personal liability on corporate officers and agents for payment of earned, but unpaid, wages and other compensation the corporation owes to employees.

### A.

### Standard of Review and Canons of Statutory Construction

■ We conduct de novo review of the questions of law before us. *Gorman v. Tucker*, 961 P.2d 1126, 1128 (Colo.1998). These questions concern Colorado's Wage Claim Act, sections 8–4–101 *et seq.*, 3 C.R.S. (2002). Our fundamental responsibility when construing a statute is to give effect to the General Assembly's intent. *Martin v. People*, 27 P.3d 846, 851 (Colo.2001); *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.1996). We must read and consider the statute as a whole and give harmonious and sensible effect to all its parts, when possible. *Martin*, 27 P.3d at 851; *Gorman*, 961 P.2d at 1128. In the event the statute is ambiguous, we consider the language the legislature chose to utilize, the evident legislative purposes, the consequences of alternative constructions, and legislative history of the General Assembly's discussion, if available. *Martin*, 27 P.3d at 851. We will not adopt a construction that leads to an absurd result. *Reg'l Transp. Dist.*, 916 P.2d at 1192; *Bd. of County Comm'rs v. IBM Credit Corp.*, 888 P.2d 250, 252 (Colo.1995).

### B.

### Colorado's Wage Claim Act Is Ambiguous On The Question Of Officer And Agent Personal Liability.

Leonard's contention of corporate officer and agent personal liability for employee wages and compensation relies entirely on the assertion that the Wage Claim Act's definition of "employer" plainly imposes joint and several liability on corporate officers for payment of wages and compensation due and payable upon termination of the employment

relationship by an employer. This definition, section 8–4–101(6), provides:

> As used in this article, unless the context otherwise requires:
>
> (6) *"Employer" means every* person, firm, partnership, association, *corporation,* migratory field labor contractor or crew leader, receiver, or other officer of court in Colorado, *and any agent or officer thereof,* of the above mentioned classes, *employing any person in Colorado* . . .

§ 8–4–101(6), 3 C.R.S. (2002) (emphasis added). The General Assembly adopted this definition in 1959. *See* Ch. 176, sec. 2, § 80–25–1 et seq., 1959 Colo. Sess. Laws 537. In 1901, when the legislature first adopted the Wage Claim Act, its provisions applied only to corporations. Ch.55, sec. 1, 1901 Colo. Sess. Laws 128. In 1919, the General Assembly added quasi-public corporations. Ch. 183, sec. 1, § 6981, 1919 Colo. Sess. Laws 617.

Looking at the current definition of "employer," we do not find any words stating that officers and agents of a corporation are individually liable for wage and compensation payment due under the employment contract. In contrast, the Wage Claim Acts of other states, notably Illinois and Kansas, contain such language. Illinois statutes provide that:

> Any *officers of a corporation or agents* of an employer *who knowingly permit such employer* to violate the provisions of this Act *shall be deemed to be the employers of the employees of the corporation.*

Ill. Comp. Stat. Sec. 115/13 (2002) (emphasis added).

> Liability of Officers and Agents. a) *An officer of a corporation or an agent* of an employer *may be personally liable* under Section 13 of the Act *for a claimant's wages or final compensation when the officer or agent actively asserted substantial control* over the management and financial affairs of the corporation or employer.

Ill. Comp. Stat. Sec. 300.620 (2002) (emphasis added).

The Kansas statute provides:

> *In case of violation* of K.S.A. 44–314, and amendments thereto or 44–315, and amendments thereto, *by a corporate employer, either the corporation or any officer thereof or any agent* having the management of the corporation *who knowingly permits* the corporation to engage in such *violation shall be deemed the employer for purposes of this act.*

Kan. Stat. Ann. § 44.323(b)(2002) (emphasis added); *see also* N.J. Stat. Ann. § 34:11–4.1(a) (2002) ("For the purposes of this act the officers of a corporation and any agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation"); *Mulford v. Computer Leasing, Inc.,* 334 N.J.Super. 385, 759 A.2d 887, 892, 894 (1999) (interpreting section 34:11–4.1(a) and holding that principal officers having management authority of the corporation may be liable for wages the corporation fails to pay, but their liability is secondary to that of the corporation).

Three features of the Illinois and Kansas statutes are particularly enlightening on the question of plain language statutory construction. These statutes directly address: (1) the issue of officer and agent personal liability, for (2) wages and compensation due and payable under the employment contract between the corporation and the employee, when (3) the corporate officer or agent has substantial authority for wage payment and/or knowingly permits the corporation to violate its duty of payment to the employee. These acts demonstrate how a legislature may choose to pierce the corporate veil and make some officers and agents personally liable in particular circumstances for payment of unpaid wages.

But, Colorado's Wage Claim Act does not contain language directly addressing the issue of corporate officer and agent personal liability for paying earned but unpaid wages. Leonard would have us read such words into our statute. These are highly consequential words that would alter the normal rules of corporate law. We should not attribute such intent to the General Assembly in the absence of plain or necessarily implied intent to change the pre-existing law through this definition. General principles of corporate law provide that officers and agents acting in their representative capacity for a corporation are not personally liable for those acts.

We reject Leonard's plain language assertion. We find that the General Assembly's choice to include "any agent or officer thereof" in the "employer" definition prompts potential alternative constructions of legislative intent: first, that the General Assembly intended to hold corporations responsible for the acts of their officers and agents; or, second, that it intended officers and agents to have joint and several liability for the payment of earned but unpaid wages. Because the Colorado definition does not contain a plain statement of the General Assembly's intent, we find the language ambiguous and turn to the rules of statutory construction.

We therefore look to the language, design, meaning, purpose, and construct of Colorado's Wage Claim Act to ascertain the General Assembly's intent on the question of joint and several officer and agent liability. Undertaking this examination, we conclude that the legislature did not intend to impose personal liability on officers and agents that is equal to the corporation's liability. In reviewing this question, we are aided by (1) the language the General Assembly actually utilizes in the Wage Claim Act and (2) longstanding Colorado corporate law, which we find our legislature did not intend to supersede.

## C.

### Colorado's Wage Claim Act

Although the General Assembly has amended the Colorado Wage Claim Act periodically, its basic design has endured since its adoption in 1901. The law has always had two basic components. First, an employer must pay an employee at regular intervals. *See* § 8–4–105(1), 3 C.R.S. (2002). "It is clear that the intent of these labor laws was to protect employees from exploitation, fraud and oppression by requiring employers to pay workers in United States currency at regular intervals." *Jet Courier Serv., Inc. v. Mulei,* 771 P.2d 486, 503 (Colo.1989) (Mullarkey, J. concurring). Second, when the employing entity terminates the employment relationship it created, it must pay the employees all earned but yet unpaid wages and compensation, within the time period the Wage Claim Act prescribes. *See* § 8–4–104(1)(a), 3 C.R.S. (2002).

The Colorado Wage Claim Act is a powerful law that the General Assembly first enacted in 1901 during a period when labor strife was endemic in the mining regions.[1] Originally, the Wage Claim Act applied only to corporations. Ch.55, sec. 1, 1901 Colo. Sess. Laws 128. In 1919, the General Assembly added quasi-public corporations. Ch. 183, sec. 1, § 6981, 1919 Colo. Sess. Laws 617. In 1959, the legislature adopted a broad definition of "employer" that gives rise to Leonard's contention in this case. Ch. 176, sec. 2, § 80–25–1 et seq., 1959 Colo. Sess. Laws 537.

No legislative history of the General Assembly's discussion when it adopted the expanded definition of employer is available.[2] When we view the "employer" definition in

---

1. The 1901 Wage Claim Act, Ch.55, sec. 1, 1901 Colo. Sess. Laws at 128–130, followed two decades of labor-initiated efforts to address corporate responsibility for wages and other working conditions. Colorado's labor union movement had its origins in the early 1880s, centering upon reform of the mining industry. Strikes were rancorous and sometimes violent. The Colorado populists managed the election of Governor Davis Waite in the 1892 election, running on a thirty-three point platform for aiding debtors, protecting laborers, and reforming the political structure of the state. Waite failed to gain re-election in 1894, losing to Albert McIntyre who accused the populists of frightening off capital and fostering a spirit of anarchy. Nevertheless, labor advocates continued to campaign for the eight-hour work day, the abolition of company scrip, and the liability of employers for wage payment. In 1899, the General Assembly passed an eight-hour work day law for mine, mill, and smelter workers. The Colorado Fuel and Iron and other companies responded by reducing wages, and the Colorado Supreme Court held that the law violated the right of the worker to sell labor. *In re Morgan,* 26 Colo. 415, 58 P. 1071 (1899). A series of labor disputes climaxed in a May 1901 strike against the Smuggler–Union Company of Telluride. In 1902, Coloradans countered with a constitutional amendment permitting adoption of an eight-hour work law. Colo. Const. Art. V, § 25a; Carl Abbott, *Colorado, A History of the Centennial State* 126–29 (1976). *See also* Dale A. Oesterle & Richard B. Collins, *The Colorado State Constitution, A Reference Guide* 14–15, 133–34 (2002).

2. Recording of legislative committee and floor discussions did not begin until 1973.

the context of the Wage Claim Act as a whole, we find that the General Assembly's evident purpose was to make the Act applicable to other entities and persons, beyond just corporations and quasi-public corporations. Nonetheless, the Wage Claim Act focuses on the liability of the entity or person who created and maintained the employment relationship for payment of the wages and compensation due and payable under the employment contract.

Most important to resolution of the present case, none of the substantive provisions of our Wage Claim Act contain language approximating the Kansas and Illinois provisions for personal officer and agent liability. The Colorado Wage Claim Act's definition of "wages" and its employee termination provision make this apparent.

> As used in this article ...
>
> (9) "Wages" or "compensation" means all *amounts for labor or service performed by employees,* whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the same or whether the labor or service is *performed under contract, subcontract, partnership, subpartnership, station plan, or other agreement for the performance of labor or service* if the labor or service to be paid for is performed personally by the person demanding payment.

§ 8–4–101(9), 3 C.R.S. (2002) (emphasis added). Thus, the definition of "wages" refers to the employment contract relationship the business entity or person creates and maintains with an employee.

The due and payable upon termination of the employee relationship provision of the Wage Claim Act, section 8–4–104(1)(a), provides:

> When an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned and unpaid at the time of such discharge is due and payable immediately. If at such time

*the employer's accounting unit, responsible for the drawing of payroll checks,* is not regularly scheduled to be operational, then the wages due the separated employee shall be made available to the employee no later than six hours after the start of such employer's next regular workday; except that, if the accounting unit is located off the work site, the employer shall deliver the check for wages due the separated employee no later than twenty-four hours after the start of such employer's next regular workday ...

§ 8–4–104(1)(a), 3 C.R.S. (2002) (emphasis added). This language, like that of the "wages" definition, plainly refers to the employment contract relationship and focuses on the accounting unit of the entity or person that hired the employee and is responsible for meeting the payroll.

The Wage Claim Act sets forth the employing entity's duty to make periodic payments in section 8–4–105(1):

> All wages or compensation, other than those mentioned in section 8–4–104, earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer, and on regular paydays no later than ten days following the close of each pay period unless the employer and the employee shall mutually agree on any other alternative period of wage or salary payments.[3]

§ 8–4–105(1), 3 C.R.S. (2002). Thus, section 8–4–105(1) imposes a duty to make periodic payroll payments at least once during the calendar month unless the employer and the employee agree otherwise.

Accordingly, the basic design of the Wage Claim Act is to (1) ensure a mechanism for regular payment of employee wages and (2) make all earned but unpaid employee wages and compensation—that are due and payable—available to the employee immediately

---

3. The original 1901 Act required all corporations, except railroad corporations, doing business within the state to pay their employees "each and every fifteen days, in lawful money of the United States." Ch.55, sec. 1, 1901 Colo. Sess. Laws 128. *See generally,* Evan S. Lipstein, *Civil Actions Under the Colorado Wage Claim Act,* 28 Colo. Law. 65 (Feb.1999).

upon termination of the employment relationship. But, no substantive provision of our Wage Claim Act contains words making officers and agents personally liable for wage payment.

The issue we now turn to is whether the General Assembly intended the Wage Claim Act's definition of "employer" to supersede Colorado's otherwise applicable corporate law, which makes officers and agents of a corporation liable only in their representative capacity, and not personally. We conclude that the General Assembly intended these corporate law principles to function in the context of the Wage Claim Act, not to displace them.

### D.

### Officers And Agents Act In A Representative Capacity For The Corporation

Insulation from individual liability is an inherent purpose of incorporation; only extraordinary circumstances justify disregarding the corporate entity to impose personal liability. William Meade Fletcher, *Fletcher Cyclopedia Corporations* § 41 (Perm. ed. 2002 Supp.). Two important principles of law insulate corporate officers from individual liability when they are acting on behalf of the corporate entity.

First, a corporation is always a separate entity distinct from its officers, directors, or investors. *Newport Steel Corp. v. Thompson,* 757 F.Supp. 1152, 1156 (D.Colo. 1990). Typically, a court will not allow the corporate veil to be pierced, except in certain factual circumstances. The court considers a variety of factors to determine whether the corporate form should be disregarded including:

(1) whether the corporation is operated as a separate entity, (2) commingling of funds and other assets, (3) failure to maintain adequate corporate records, (4) the nature of the corporation's ownership and control, (5) absence of corporate assets and undercapitalization, (6) use of the corporation as a mere shell, (7) disregard of legal formalities, and (8) diversion of the corporation's funds or assets to noncorporate uses. *Id.* at 1157.

Second, corporate officers occupy the position of agents in relation to third persons dealing with the corporation. Therefore, personal liability of officers is governed by principles of agency law. William Meade Fletcher, *Fletcher Cyclopedia Corporations* § 41. "Generally, a corporate officer acting in his or her representative capacity and within his or her actual authority is not personally liable for such representative acts unless acting on behalf of an undisclosed principal." *Kunz v. Cycles West, Inc.,* 969 P.2d 781, 784 (Colo.App.1998). Furthermore, "unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." Restatement (Second) of Agency § 320 (1958).

A corporate officer is not the employer responsible for creating the contractual employment relationship and is not personally responsible for a breach of that relationship, unless he or she created the relationship without disclosing the responsible principal corporation to which he answered as an agent. Instead, an officer acts for the corporation when he or she extends an offer of employment or terminates the employment relationship. *See United States v. Van Diviner,* 822 F.2d 960, 963 (10th Cir.1987) (officer was not personally liable for custodial maintenance contract when he acted for a disclosed principal corporation); *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1231 (Ind.1994) ("It is a matter of black-letter law that where the agent acted within the scope of the agent's authority in signing a contract on behalf of the principal, the remedy of one seeking to enforce the contract is against the principal and not the agent"); *Phillips v. Montana Educ. Ass'n,* 187 Mont. 419, 610 P.2d 154, 157 (1980) (officers, as agents of a corporation, are shielded from personal liability for acts taken on behalf of the corporation, within the scope of employment, and in furtherance of corporate business interests, including breaching of employment contracts).

### E.

### The Responsibility Of NationsWay For Wage And Compensation Payment To Employees Upon Termination

 In the case certified to us, the entity responsible for creating the employment relationship and meeting the payroll was NationsWay. The officers of Nations-Way were not parties to the employment contracts. In addition, the officers were acting in their representative capacity, with actual authority from the NationsWay board of directors, when they filed the bankruptcy petition.[4] The other employees of Nations-Way knew that the officers were acting for NationsWay. As agents of NationsWay, the officers were insulated from liability by the general principles of agency law.

Under Leonard's view, the officers and agents of corporations are always responsible for wages due as a result of the employment relationship and must act as a surety in the event the payroll is not met. We disagree. We find no provision of the Wage Claim Act—in contrast to the plain language of the Illinois and Kansas statutes—that makes the personal assets of officers available for recourse to other employees of the corporation when the hiring entity discharges them.

 We presume that the General Assembly knows the pre-existing law when it adopts new legislation or makes amendments to prior acts. *See Vaughan v. McMinn,* 945 P.2d 404, 409 (Colo.1997). The well-established principles of both corporate law and agency law insulate officers from personal liability unless they act outside the scope of their authority.

In contrast to Leonard's contention of blanket personal liability, our Wage Claim Act does provide for agent liability in some circumstances. Section 8–4–117, 3 C.R.S. (2002), provides that "any employer *or agent*

*of an employer*" who refuses to pay wages, when under a duty to pay, is guilty of a misdemeanor in specified circumstances:

> any employer *or agent* of an employer who, being able to pay wages or compensation and being under a duty to pay, *willfully refuses to pay* as provided in this article, or *falsely denies* the amount of a wage claim, or the validity thereof, or that the same is due, *with intent* to secure for himself or another person any discount upon such indebtedness or any under-payment of such indebtedness or *with intent to annoy, harass, oppress, hinder, delay, or defraud the person* to whom such indebtedness is due, is guilty of a misdemeanor . . .

§ 8–4–117, 3 C.R.S. (2002) (emphasis added). The plain language of this section makes "employers" and "agents" liable for willfully or intentionally withholding employee wages. Significantly, when we examine the wage payment obligation of section 8–4–104(1)(a), the termination provision, and section 8–4–104(3), the civil penalty provision, we find no similar language making officers or agents liable for wage payment or civil penalties.

Other related provisions of Colorado law demonstrate that the General Assembly did not intend blanket corporate officer and agent liability for unpaid wages and other compensation. In 1903, the General Assembly adopted the Colorado Wage Preference Act to provide that debts to employees shall be considered preferred claims when the employing business is suspended by creditor action:

> when the business of any person, corporation, company or firm shall be suspended by the action of creditors or be put into the hands of a receiver or trustee, then in all such cases the debts owing to laborers, servants or employees, which have occurred by reason of their labor, or employ-

---

**4.** The individual officers who filed the petition did not act wrongfully or on their own initiative. Rather they filed the petition at the direction of NationsWay and were discharging their duty to the corporation. Under section 7–108–101(2), 2 C.R.S. (2002), all corporate powers are exercised by or under the authority of a board of directors. State law determines whether a bankruptcy petition is filed by a person with proper authority.

*Yellow Cab Coop. Ass'n v. Mathis,* 144 B.R. 505 (D.Colo.1992). In Colorado, only a board of directors has the authority to file a petition or authorize its filing. *Id.* The officers who filed the petition in this case did not have the legal ability to file the petition causing the employees' termination without the permission and authority of the board of directors, which they had.

ment shall be considered and treated as preferred claims and such laborers, or employees shall be preferred creditors, and shall first be paid in full . . .

Ch. 70, sec. 1, 1903 Colo. Sess. Laws 143 (recodified and now appearing as section 8–10–101, 3 C.R.S. (2002)). This provision explicitly recognizes that the person or entity obligated to pay wages and other compensation because of the employment relationship may experience creditor-initiated court proceedings. Although this provision is not directly applicable in federal bankruptcy situations, it evidences the intent of the General Assembly to provide protection for employees in a creditor situation by granting them preferred status, not by giving them the opportunity to collect their wages from the personal assets of officers.

Personal liability of officers for wages in the event of business insolvency would be a sharp departure from corporate law principles, and we would expect the General Assembly to state such intent specifically or by necessary implication. No such language or evident intent appears in Colorado's Wage Claim Act. To the contrary, the General Assembly recognized the problem of corporate insolvency and created in section 8–4–117 an exception to employer and agent criminal liability in circumstances of state creditor proceedings that involve limited corporate control over assets.[5]

"In the absence of some exception, neither the officers nor the directors of a corporation are personally responsible for the debts of a corporation merely because they are officers or directors of the corporation." *See* William Meade Fletcher, *Fletcher Cyclopedia Corporations* § 1117 (Perm. ed.2002 rev. vol. 3A). Requiring officers of a corporation to act as sureties for wage payment out of their personal assets in the event of business insolvency or bankruptcy would be a substantial deterrent to serving as an officer. This is not a liability that one normally anticipates in occupying such a position with a company, and the Wage Claim Act provides no clear notice

that employee officers of a corporation incur such a legal obligation.

### F.

### Case Law of Our Court of Appeals

Our court of appeals has had three occasions to consider individual liability under Colorado's Wage Claim Act. In *Koontz v. Rosener*, 787 P.2d 192 (Colo.App.1989), plaintiffs brought a wage claim against Rosener, the principal majority shareholder of a real estate brokerage firm, for unpaid wages. The court of appeals found that, plaintiffs asserted only a compensation claim against Rosener individually. Plaintiffs were "employees of Range . . . and therefore, the wage claim should have been asserted against the corporate firm." *Id.* at 196–97.

Three years later, a different panel of the court of appeals held that officers could be individually liable under the Wage Claim Act. The court of appeals opined in *Cusimano* that the Wage Claim Act's definition section "clearly discloses an intent to impose personal liability for wages on corporate officers." *Cusimano v. Metro Auto, Inc.*, 860 P.2d 532, 534 (Colo.App.1992). The court concluded that, "the Colorado Wage Claim Act imposes personal liability on at least high ranking corporate officers based solely on their status as officers." *Id.* at 534.

We disagree with the court of appeals' holding and decline to follow it. The *Cusimano* court provides no analysis for its conclusion. Nothing in the plain language of the Wage Claim Act evidences an intent to impose liability solely based on an officer's status or rank. As we have explained in this opinion, the provisions of the Wage Claim Act, when read together, do not support the *Cusimano* court's conclusion.

In *Major v. Chons Bros., Inc.*, 53 P.3d 781 (Colo.App.2002), the court of appeals held that personal liability may not attach to an agent under the Colorado Wage Claim Act

---

**5.** Under section 8–4–117, willful failure to pay wages may result in criminal liability except, " 'being able to pay wages or compensation' does not include an employer who is unable to pay wages or compensation by reason of a chapter 7 bankruptcy action or *other court action which results in the employer having limited control over his assets.*" § 8–4–117, 3 C.R.S. (2002) (emphasis added).

simply because of his job title. "Instead, the inquiry must focus on whether [the agent's] status in [the corporation] was such that he had some authority or responsibility to affect [the corporation's] wage payment policies." *Id.* at 786–87. Nevertheless, to the extent this opinion of the court of appeals follows *Cusimano,* we disagree and decline to follow it. We hold that the definition of "employer" in section 8–4–101(6) in the Wage Claim Act does not function as a personal liability provision.

Upon review of other jurisdictions, we find no court that has construed its state's Wage Claim Act to impose the kind of blanket personal liability on officers and agents Leonard urges us to adopt. Some jurisdictions with an employer definition similar to ours have imposed civil liability for wage payment on officers based on their high-ranking status or for knowing or willful violations of the wage claim act. *See Mohney v. McClure,* 529 Pa. 430, 604 A.2d 1021 (1992) (the court, in a per curiam opinion, construed its statute to limit personal liability to top management, or active decision makers); *Belcufine v. Aloe,* 112 F.3d 633, 639–40 (3rd Cir.1997) (declining to impose personal liability on officers regardless of rank in a bankruptcy situation because they have no ability to control the payment of wages); *Dumas v. InfoSafe Corp.,* 320 S.C. 188, 463 S.E.2d 641, 645 (S.C.Ct.App.1995) (only officer who knowingly permits the corporation to violate the act is personally liable).

We decline to follow such precedent, as it would require us to read into our Wage Claim Act terms like "knowingly permit," "high ranking," or "top management" as the predicate for personal liability. Nothing in the actual language of the wage acts of these jurisdictions attaches personal civil liability to only high ranking officers or knowing violations. This is court made law, apparently deriving from the unwillingness of those courts to use the "employer" definition to impose the kind of blanket liability Leonard urges on us in this case.

## G.

### Conclusions

Based on our inquiry into the language, intent, design, and construct of Colorado's Wage Claim Act, we conclude that the inclusion of "officer" and "agent" in the definition of "employer" under section 8–4–101(6), 3 C.R.S. (2002) has two functions. First, it makes the entity that has created the employment relationship and owes wages and other compensation under the Wage Claim Act responsible for the actions of its agents and officers. Second, it relates to another provision of the Wage Claim Act that imposes criminal liability on officers and agents for willful or intentional wrongful acts under section 8–4–117, 3 C.R.S. (2002). Contrary to Leonard's contention, neither section 8–4–101(6) nor 8–4–104(1)(a), 3 C.R.S. (2002) impose personal civil liability on officers or agents to make wage and other compensation payments the corporation fails to make. Without evidence of specific intent by the General Assembly to disregard well-established principles of corporate and agency law, we conclude that the extension of such personal liability, even to only high-ranking officers, would be merely an insertion of policy considerations not expressed by the legislature and not for us to make.

## III.

Accordingly, we hold that Colorado's Wage Claim Act does not make officers and agents of a corporation jointly and severally liable, along with the corporation, for the payment of wages and compensation due and payable to the employee under the employment contract and the Wage Claim Act. We return this case to the United States Court of Appeals for the Tenth Circuit for further proceedings.

Chief Justice MULLARKEY dissents, and Justice MARTINEZ and Justice BENDER join in the dissent.

Chief Justice MULLARKEY, dissenting:

I respectfully dissent because the majority disregards the plain and unambiguous language of the Colorado Wage Claim Act. § 8–4–101 *et seq.,* 3 C.R.S. (2002). Both on its face and under scrutiny, the Wage Claim Act holds all officers of a corporation personally

liable for an employee's earned and unpaid wages, regardless of whether the corporation has filed for bankruptcy. Therefore, in response to the questions certified to us from the Tenth Circuit Court of Appeals, I would answer that (1) yes, officers of a now-bankrupt corporation are individually liable for the wages of the corporation's former employees, and (2) yes, all officers are individually liable due to mere status as officers.

The majority opinion absolves all corporate officers of all liability and accountability, defeating the legislature's intent in two separate steps. First, the majority gives no meaning to the plain language "and any agent or officer thereof," words that the General Assembly explicitly added to Colorado's Wage Claim Act in 1959. Second, the majority uses a statutory construction analysis as an opportunity to re-write the Act's language, dismiss the Act's history, and obscure the legislature's intent with irrelevant state law. In doing so, the majority relieves corporate officers of liability precisely at a time in our nation's history when we should be giving full effect to statutes that explicitly encourage corporate responsibility.

## I. The Plain Language of the Act Holds Corporate Officers Personally Liable for Unpaid Wages.

When a corporation fires an employee and then does not pay the employee his or her previously earned wages, the Wage Claim Act imposes personal liability upon the officers of the corporation for those wages. A plain reading of the Act's provisions confirms this conclusion:

First, the Wage Claim Act provides that "[w]hen an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned and unpaid at the time of such discharge is due and payable immediately." § 8-4-104(1)(a), 3 C.R.S. (2002). Second, the Act provides that if the employer refuses to pay such wages without a good faith legal justification, the employer is liable, "in addition to the compensation legally proven to be due, as a penalty for such refusal the greater of an amount equal to fifty percent thereof or an amount equal to the amount of the wages payable per day to such employee not to exceed ten days." § 8-4-104(3), 3 C.R.S. (2002). Third and most importantly, the Act defines an "employer" as "every person, firm, partnership, association, *corporation,* migratory field labor contractor or crew leader, receiver, or other officer of court in Colorado, *and any agent or officer thereof,* of the above mentioned classes, employing any person in Colorado...." § 8-4-101(6), 3 C.R.S. (2002) (emphasis added).

Read together, the above three provisions unambiguously declare that corporations, *"and any agent or officer thereof,"* are liable for an employee's earned but unpaid wages when the employee is terminated by volition of the employer. No other reasonable conclusion can be drawn from the plain language of the Wage Claim Act. The explicit inclusion of officers in the statutory definition of "employer" clearly holds a corporate officer personally liable for earned and unpaid wages. *See Cusimano v. Metro Auto, Inc.,* 860 P.2d 532, 534 (Colo.App.1992); *accord Leonard v. McMorris,* 106 F.Supp.2d 1098, 1108–09 (D.Colo.2000). The majority disagrees that the General Assembly intended for officers to act as sureties for unpaid wages when it added officers to the language of the Act, maj. op. at 331, but without such intent, there would have been no purpose whatsoever for the General Assembly to specifically supercede the *conventional* meaning of "employer" with the more expansive *statutory* definition of "employer" encompassing officers. The only viable reason for adding officers to the definition of liable employers would be to hold officers personally liable for wages the corporate entity fails to pay.

Several other states have similar statutes requiring the prompt payment of employees' wages when earned, and some of these statutes, like Colorado's Wage Claim Act, impose personal liability on corporate officers. Although decisions interpreting such comparable statutes vary as to the type of officer covered or the effect of a corporate bankruptcy on an officer's liability, none—absolutely none—absolves corporate officers of all liability as the majority does here.

In South Carolina, for example, an "employer" is liable for unpaid wages under the Payment of Wages Act and an "employer" is defined to include "any agent and officer." S.C.Code Ann. § 41–10–10(1) (Law.Co-op.2002). By virtue of this definition, South Carolina courts have held that the legislature intended to impose individual liability on agents or officers who knowingly permit their corporation to violate the Act. *See Dumas v. InfoSafe Corp.*, 320 S.C. 188, 463 S.E.2d 641, 645 (S.C.Ct.App.1995).

Likewise, in Pennsylvania, the language "any agent or officer" is included in the definition of "employer" in the Wage Payment and Collection Law ("WPCL"). 43 Pa. Cons.Stat. § 260.2a (2002). Again, by virtue of this statutory definition of "employer," Pennsylvania courts have imposed personal liability on officers involved in the policy-making decisions of the corporation. *See, e.g., Mohney v. McClure*, 390 Pa.Super. 338, 568 A.2d 682, 685–86 (1990); *Amalgamated Cotton Garment and Allied Indus. Fund v. Dion*, 341 Pa.Super. 12, 491 A.2d 123, 125 (1985) ("It is undeniable that the definition of 'employer' encompasses an officer of the corporation, thus, we construe the WPCL to impose liability here on the officer of a delinquent corporation").

The Third Circuit subsequently carved out a Chapter 11 bankruptcy exception to the WPCL in *Belcufine v. Aloe*, 112 F.3d 633 (3d Cir.1997), but relied on the fact that because the specific purpose of Pennsylvania's WPCL is "to deter managers from strategically diverting company resources away from the payment of wages," the WPCL should apply "in only those contexts in which managers have room to behave strategically." *Id.*[1] In Colorado, no bankruptcy exception can be found in the plain language of the Wage Claim Act and the purpose of Colorado's statute is not as constrained as Pennsylvania's. Colorado's Wage Claim Act does not distinguish between officers according to their managerial powers, therefore the statute does not seek to target only higher man-

agers. The *Belcufine* analysis therefore would not apply to Colorado's Wage Claim Act.

In sharp contrast to the above conclusions that the words "agent" and "officer" indicate some form of agent and officer liability for unpaid wages, today's majority concludes that corporate officers are absolved of any and all liability for such wages. This conclusion gives no meaning to the words *"and any agent or officer thereof"* under Colorado's Wage Claim Act. The majority does not explain why these specific words are a part of Colorado's statute or why other states with identical statutory definitions of "employer" have held officers personally liable for due wages. Rather, the majority skirts the issue and diverts our attention to Illinois and Kansas, where wage statutes are structured and worded very differently. *See* maj. op. at 327. Unlike the South Carolina and Pennsylvania statutes, the Illinois and Kansas statutes shed no light on how a court should interpret the words *"and any agent or officer thereof"* in the definition of "employer" under Colorado's Wage Claim Act.

The majority avoids a straightforward analysis of the plain language of Colorado's statute because such an analysis can lead to only one conclusion: if an "employer" is liable for unpaid wages and the statutory definition of "employer" includes "officers," basic logic dictates that officers are liable for unpaid wages.

Because this logic leads to a result at odds with the majority's policy preferences, the majority declares the Act "ambiguous" and muddies the clarity of an Act we have described as a "clear, comprehensive statutory scheme." *Lambdin v. Dist. Ct.*, 903 P.2d 1126, 1129 (Colo.1995). By doing so, the majority is able to invoke our rules of statutory construction and search for a more palatable interpretation of the General Assembly's intent. *See, e.g., Gorman v. Tucker*, 961 P.2d 1126, 1128 (Colo.1998) (a court need not look to rules of statutory construction if

---

**1.** The Pennsylvania state courts have not yet ruled on this bankruptcy exception issue, and, in *Belcufine*, Judge Greenberg vigorously dissented because "there is nothing in the WPCL itself or in the case law to support a conclusion that an

agent or officer can be liable only if he or she diverts funds that should have been applied to obligations due under the WPCL." *Id.* at 644 (Greenberg, J. concurring and dissenting).

the language of the statute is clear). Deeper scrutiny of the Act actually confirms, however, that the General Assembly intended to hold all officers of a corporation personally liable for an employee's earned and unpaid wages when it added the words *"and any agent or officer thereof"* to the Act.

## II. Under Rules of Statutory Construction, the Act Holds Corporate Officers Personally Liable for Unpaid Wages

In the majority's lengthy discussion of legislative intent, the majority professes to examine the language, design, meaning, purpose, and construct of the Wage Claim Act. *See* maj. op. at 328. Instead, the majority does no more than (1) re-write the Act's language; (2) dismiss the Act's history, both legislative and otherwise; (3) analyze irrelevant state statutes; and (4) provide an irrelevant summary of traditional corporate law principles. In other words, the majority disregards the General Assembly's unmistakable intent to hold corporate officers accountable for unpaid wages.

First, the majority re-writes the Act's language by constructing an artificial "employing entity" analysis. *See id.* at 328–330, 333. The majority contends that the Act limits liability to an "employer" re-defined as "the entity or person who created and maintained the employment relationship for payment of the wages and compensation due and payable under the employment contract." *Id.* at 328. This mysterious new definition has no basis whatsoever in the statute and was not argued by the parties. This definition substitutes the term "employing entity" for all of the separate statutory "employers" explicitly listed in section 8–4–101(6) of the Wage Claim Act, and in doing so the majority conveniently erases the words "corporation[s] ... *and any agent or officer thereof"* from the language of the Act. § 8–4–101(6). Only by changing the Act's language to its own is the majority able to proclaim that it cannot find

any statutory language holding corporate officers and agents individually liable for unpaid wages. *See* maj. op. at 327, 329.

The majority then attempts to bolster its "employing entity" analysis by focusing on the statute's references to the words "wages" and "accounting unit," arguing that such references imply that the General Assembly intended to target only the entity that literally hired and paid the employee. *See id.* at 329. This argument disregards the available legislative history of the Wage Claim Act. The definition of "wages" in section 8–4–101(9) has no relevance to the clear and separate definition of "employer" in section 8–4–101(6), and the majority can cite no legal authority stating otherwise. As for the Act's reference to the "accounting unit" mentioned in section 8–4–104(1)(a), legislative history tapes clearly reveal that the General Assembly added the "accounting unit" clause for the sole purpose of giving employers slightly more time to pay the terminated employee. *Hearing on H.B. 1231 Before the House,* 1986 Leg., 55th Sess. (Colo.1986).[2] Thus, the Act's references to "wages" and "accounting unit" do not in any way support the majority's argument that the General Assembly did not intend to extend personal civil liability to officers.

Moreover, the majority disregards the historical background of the Wage Claim Act as it searches for legislative intent. The historical context of the Act reinforces the conclusion that when the General Assembly specifically added the words *"and any officer or agent thereof"* to the Act in 1959, it intended to extend personal liability to corporate officers. In its 100 year history, the general purpose of the Wage Claim Act has been to assure the timely payment of an employee's earned wages and to provide adequate relief when those wages are not paid. *See, e.g., Lambdin,* 903 P.2d at 1129; *Cusimano,* 860 P.2d at 534. This purpose of the Act has

---

2. Whereas previous versions of section 8–4–104(1)(a) required all payments to be made "immediately," the 1986 amendment added the following language:

 If at such time the employer's accounting unit, responsible for the drawing of payroll checks,

 is not regularly scheduled to be operational, then the wages due the separated employee shall be made available to the employee ... no later than six hours after said unit would normally be operational.
 Ch. 65, sec. 2, 1986 Colo. Sess. Laws 504, 505.

remained constant since its inception. The scope of its application, however, has widened substantially over time.

When the Act originally was enacted in 1901, it was targeted only at "corporations hereafter organized for pecuniary profit, except railroad companies." Ch. 55, sec. 8, 1901 Colo. Sess. Laws 128, 130. The Act came during a time when the General Assembly was enacting labor legislation in order to combat employer fraud and oppression, which had led to strikes and violent disputes during the late 1800s. *See Jet Courier Serv., Inc. v. Mulei,* 771 P.2d 486, 503 (Colo.1989) (Mullarkey, J. concurring) (citing *In re House Bill No. 147,* 23 Colo. 504, 507, 48 P. 512, 513 (1897)). In 1919, the General Assembly broadened the Wage Claim Act to eliminate the railroad exemption and to apply the Act to "all private or quasi-public corporations" organized for pecuniary profit. Ch. 167, sec. 6, § 6988, 1919 Colo. Sess. Laws 617, 619.

Then, in 1959, the General Assembly significantly changed the Act to what is essentially its current form, expanding the Act's application even further to include any "employer," defined in its entirety as:

> every person, firm, partnership, association, corporation, receiver, or other officer of court in Colorado, *and any agent or officer thereof,* of the above mentioned classes, employing any person in Colorado, provided, however, that the provisions of this act shall not apply to counties, cities and counties, municipal corporations, quasi municipal corporations, school districts, and irrigation, reservoir, drainage conservation company or district organized and existing under the laws of Colorado.

Ch. 167, sec. 2, § 80–25–1 et seq., 1959 Colo. Sess. Laws 537.[3] This new definition expressed the 1959 General Assembly's dissatisfaction with previous versions of the Act, which held only corporate entities liable for unpaid wages.

It is worth noting here that in 1959, both houses of the General Assembly consisted of a majority of legislators who were elected on a pro-labor platform. *See* Harold V. Knight, *Working in Colorado: A Brief History of the Colorado Labor Movement* 163–64 (1971).[4] Organized labor therefore had great hopes that the General Assembly would enact its legislative program during the 1959 session. *Id.* Although not all these hopes were realized, the amendment to the Wage Claim Act that we are construing today .was one of labor's victories that year.

With remarkable attention to detail, the 1959 General Assembly materially and intentionally broadened the application of the Wage Claim Act to a wide variety of statutory "employers" wholly separate and distinct from the traditional corporate entity. Agents and officers are among those liable as statutory "employers," and the General Assembly has not changed its position in the forty-four years since the 1959 definition went into effect. Most notably, the General Assembly made no changes to the Act after the 1992 *Cusimano* case, where the Colorado Court of Appeals interpreted the plain language of the Wage Claim Act to hold corporate officers personally liable for unpaid wages. 860 P.2d 532.

The majority's refusal to explain, let alone give any real meaning to, the 1959 addition of the words *"and any agent or officer thereof"* raises concerns about whether the majority is willing to give appropriate weight to evidence of legislative intent contradicting its ultimate holding.

Rather than give any consideration to the illuminating historical background of the Wage Claim Act, the majority instead chooses to discuss irrelevant state statutes such as Colorado's 1903 Wage Preference Act, §§ 8–10–101 to 103, 3 C.R.S. (2002), and the criminal provision of the Wage Claim Act, § 8–4–117, 3 C.R.S. (2002). *See* maj. op. at 331.

---

**3.** The Act's current definition is even broader than the 1959 version—it now includes a "migratory field labor contractor or crew leader" as an additional "employer" subject to the Act. § 8–4–101(6), 3 C.R.S. (2002). Certainly these additions show the legislature's continued determination to hold individuals directly liable to employees for unpaid wages.

**4.** Colorado's governor and lieutenant governor had also been elected on a pro-labor platform. *See id.*

The majority's reliance on these two statutes is misguided. The Wage Preference Act has no direct relevance to this case and the majority acknowledges this. *Id.* at 331. The Wage Preference Act applies only to business dissolution actions filed under state law, and here, NationsWay has filed a petition under Chapter 11 of the federal Bankruptcy Code. *Accord Leonard,* 106 F.Supp.2d at 1111–12. The Wage Preference Act is also irrelevant to this case because it does not address the liability of corporate officers at all—the Wage Preference Act focuses solely on the corporate entity.

Furthermore, the Wage Preference Act shows no indication of a legislative intent to limit an employee's remedies when seeking unpaid wages under the Wage Claim Act. The majority fails to recognize that the "intent" it extracts from the 1903 Wage Preference Act cannot be reconciled with the General Assembly's 1959 amendments to the Wage Claim Act. When the General Assembly originally enacted the Wage Preference Act back in 1903, it gave employees preferred creditor status because officers and agents were not yet liable for wages under the Wage Claim Act. Ch. 70, sec. 1, 1903 Colo. Sess. Laws 143. As discussed above, it was not until 1959 that the words *"and any agent and officer thereof"* were added to the section 8–4–101(6) definition of liable "employers." Ch. 167, sec. 2, 1959 Colo. Sess. Laws 537. Thus, in 1903, the General Assembly could not have intended to choose a "preferred status" remedy over a "personal officer liability" remedy, because the latter did not exist under the Wage Claim Act at the time. For the majority to imply otherwise, *see* maj. op. at 331, is misleading.

Moreover, the majority erroneously implies that section 8–4–117 of the Wage Claim Act alters or otherwise affects the general provisions of the Wage Claim Act. *Id.* at 331–333. Section 8–4–117 is an independent criminal provision that is irrelevant to this case. The majority ignores the statutory mandate which limits section 8–4–117 only to extraordinary circumstances warranting the imposition of criminal penalties. Section 8–4–117 provides:

> *In addition to any other penalty imposed by this article,* any employer or agent of an employer who, being able to pay wages or compensation and being under a duty to pay, willfully refuses to pay ... is guilty of a misdemeanor.... *For purposes of this section,* "being able to pay wages or compensation" does not include an employer who is unable to pay wages or compensation by reason of a chapter 7 bankruptcy action or other court action which results in the employer having limited control over his assets.

*Id.* (emphasis added).[5]

As is obvious from the wording of the statute, the sole purpose of section 8–4–117 is to impose additional criminal penalties on an employer who willfully refuses to pay wages, as opposed to a statutory employer who simply fails to pay wages. Again, these criminal penalties are *in addition to,* not in replacement of, the personal civil liability imposed through section 8–4–104(1)(a), section 8–4–104(3), and the definition of liable "employers" in section 8–4–101(6). As for the criminal provision's separate definition of employers who are "able to pay wages or compensation," the clause is expressly limited to "this section" of the Wage Claim Act and has no impact on the definition of "employer" under section 8–4–101(6). In short, section 8–4–117 addresses additional criminal sanctions only and has no bearing on this civil action.

The majority obscures the pivotal issue in this case—the statutory meaning of "employer"—not only with irrelevant state statutes, but also with an irrelevant summary of traditional corporate and agency law principles. *See* maj. op. at 330–331.

This case does not turn on traditional or common-law corporate and agency law principles. This case turns on the statutory language of the Wage Claim Act and its definition of "employer." Our duty here is to effectuate the intent of the General Assem-

---

**5.** Legislative history tapes reveal that the specific purpose of adding "agents" to this particular criminal provision was to further deter employers from willfully "passing the buck" to payroll clerks as an excuse to delay payment. *Hearing on H.B. 1231 Before the House,* 1986 Leg., 55th Sess. (Colo.1986); *see* Ch. 65, sec. 2, 1986 Colo. Sess. Laws 504, 506–07.

bly, *see Martin v. People,* 27 P.3d 846, 851 (Colo.2001), not to impose our own policy preferences in a cloud of irrelevant treatises and case law. *See* maj. op. at 330–331. Thus, this court's focus must be on the *statutory* meaning of "employer" as stated by the General Assembly rather than on the *conventional* meaning of "employer."

Statutes regularly amend traditional legal principles, and the majority refuses to recognize that this is precisely what has happened here. The plain language of the Wage Claim Act clearly overrides traditional personal liability protection, extending wage liability beyond the corporate entity to include *"any agent or officer thereof."* § 8–4–101(6). These words in the Wage Claim Act pierce the corporate veil. By explicitly superceding a corporate officer's traditional protections from personal liability, the Wage Claim Act provides "an incentive for corporate officers to ensure that their corporation will pay wages earned." *See Cusimano,* 860 P.2d at 534. This incentive recognizes that although the corporation is a distinct entity, corporate entities are run by real people, namely the officers, who make real decisions affecting wage payments.

Thus, the General Assembly intended the Wage Claim Act to hold corporate officers personally liable for not protecting workers' wages. Yes, the amount of liability can be substantial. But, as the Federal District Court best articulated, "courts are not in the business of rewriting duly enacted state legislation merely because it creates 'staggering personal liability.'" *Leonard,* 106 F.Supp.2d at 1110. Personal liability may not normally be anticipated by corporate officers, *see* maj. op. at 334, but when the issue is the payment of earned wages, the plain language of the Wage Claim Act gives officers clear and ample notice of their potential liabilities. If the General Assembly disagrees, it is free to amend the Act as it sees fit.

Given the plain language and historical background of the Wage Claim Act, the General Assembly fully intended to extend personal liability to corporate agents and officers for the unpaid wages of employees, regardless of whether the corporation has filed for bankruptcy. Unfortunately, the majority ignores the legislature's intent and the result of today's decision is the same as it would have been under the 1901 version of the Wage Claim Act—the corporate entity alone is liable for unpaid wages, and, when the corporation cannot or will not pay these wages, workers have no meaningful recourse.

For the foregoing reasons, I respectfully dissent.

I am authorized to say that Justice MARTINEZ and Justice BENDER join in this dissent.

